UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL BRAWER and
PHILIP GALGANO,

        *Plaintiffs*,

    - against -

EGAN-JONES RATINGS COMPANY, SEAN
EGAN, and WENRONG HU

        *Defendants*.

Civil Action No. 24-CV-1895

Honorable Analisa Torres

## DEFENDANTS EGAN-JONES RATINGS COMPANY AND SEAN EGAN'S ANSWER AND AFFIRMATIVE AND OTHER DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Pursuant to Federal Rules of Civil Procedure 8 and 12(a)(1)(A)(ii), Defendants Egan-Jones Ratings Company ("EJR") and Sean Egan ("Egan") (together, "Defendants") hereby submit their answer to Plaintiffs' First Amended Complaint. No answer is required with respect to the headings, prayer for relief, and other contents of the First Amended Complaint that do not set forth allegations of fact and are not included within numbered paragraphs. Any such materials, as well as the allegations of the First Amended Complaint, are repeated herein solely for ease of reference.

## PRELIMINARY STATEMENT

1.      The Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act") took steps to reform the credit rating agency industry in critical ways important to safeguarding the financial markets, including the management of conflicts of interest between commercial motivations and the pursuit of analytical rigor in the ratings process. The Sarbanes-Oxley Act sought to protect investors and the public by heightening reporting requirements and combatting fraud. In addition, both the Dodd-Frank Act and the Sarbanes-Oxley Act increased protections for whistleblowers who raise complaints about potential violations of those rules and procedures. This complaint arises out of a series of repeated, continuous, and severe failures by Egan-Jones as a regulated organization and by the individual executives responsible for its management and governance.

1

**ANSWER**:  Defendants admit that the Dodd-Frank Act and the Sarbanes-Oxley Act speak for

themselves.   Defendants deny all allegations in Paragraph 1 to the extent they inaccurately

characterize or otherwise are inconsistent with the Dodd-Frank Act or Sarbanes-Oxley Act. The

remaining allegations set forth in Paragraph 1 contain characterizations, legal argument and

conclusions to which no response is required.  To the extent that a response is required, Defendants

deny the remaining allegations of Paragraph 1.

2.      For some two years prior to their unlawful termination, Plaintiffs were senior
employees of Egan-Jones and observed an ongoing pattern of improper conduct that Plaintiffs
reasonably believed constituted potential violations of federal securities law and, in particular, the
prohibitions against issuing ratings based upon commercial motivations.  In good faith, Plaintiffs
repeatedly objected to the conduct and reported the violations internally to Egan, Egan-Jones's in-
house counsel, and Egan-Jones's board of directors.  Plaintiffs also raised their concerns with
Egan-Jones's outside counsel and with the independent consultant retained by Egan-Jones
pursuant to its earlier settlement with the Securities and Exchange Commission ("SEC") of similar
charges.  In addition, Plaintiffs raised their reasonable belief that securities statutes and regulations
were violated directly with the SEC staff, first with Office of Credit Ratings ("OCR") and later
with the Office of the Whistleblower and the Division of Enforcement.

**ANSWER**:  Defendants admit that they entered into a settlement with the SEC dated June 21,

2022 ("SEC Order") and the SEC Order speaks for itself.  Defendants deny all allegations in

Paragraph 2 to the extent they inaccurately characterize or otherwise are inconsistent with the SEC

Order.  Defendants lack knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and

accordingly deny such allegations of Paragraph 2.  The remaining allegations set forth in Paragraph

2 contain characterizations, legal argument and conclusions to which no response is required.  To

the extent that a response is required, Defendants deny the remaining allegations of Paragraph 2.

3.      As a direct result of their good faith reports of potential violations of federal
securities law, Plaintiffs were repeatedly harassed and threatened with demotion and termination
of their employment at Egan-Jones.  After Plaintiffs had submitted their formal whistleblower
complaints to the SEC, Egan-Jones terminated Plaintiffs' employment using the false pretense of
a reorganization, when in fact the terminations constituted retaliation for their lawful reports of
illegal conduct they had observed at Egan-Jones.

774701533

**ANSWER**:  Paragraph 3 contains characterizations, legal argument, and conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 3.

4.      In this lawsuit, Plaintiffs seek compensatory damages and all other legal relief permitted under the Dodd-Frank Act, the Sarbanes-Oxley Act, and New York Labor Law.

**ANSWER:**  Defendants admit that the First Amended Complaint purports to seek relief under the Dodd-Frank Act, Sarbanes-Oxley Act, and New York Labor Law.  Defendants deny the remaining allegations of Paragraph 4.

## PARTIES

5.      Plaintiff Michael Brawer is an individual residing in New Jersey.  From November 2019 until his unlawful termination in January 2024, Mr. Brawer served as the Designated Compliance Officer and Chief Risk Officer of Egan-Jones, assigned to its offices in New York, NY and Haverford, PA.

**ANSWER**:  Defendants admit that Plaintiff Michael Brawer ("Brawer") was employed with EJR from November 2019 until January 2024 as the Designated Compliance Officer and Chief Risk Officer of EJR, and was assigned to its offices in New York, NY and Haverford, PA.  Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations concerning Brawer's residence and accordingly deny such allegations. The remaining allegations set forth in Paragraph 5 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 5.

6.      Plaintiff Philip Galgano is an individual residing in New Jersey.  From January 2020 until  his unlawful termination in January 2024, Mr. Galgano served as a Senior Director and Head of Ratings of Egan-Jones, assigned to its office in New York, NY.

**ANSWER**:  Defendants admit that Plaintiff Philip Galgano ("Galgano") was employed with EJR from January 2020 until January 2024 as the Senior Director and Head of Ratings of EJR, assigned to its office in New York, NY.  Defendants lack sufficient knowledge or information to form a

belief as to the truth or falsity of the allegations concerning Galgano's residence and accordingly deny such allegations. The remaining allegations set forth in Paragraph 6 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 6.

7.    Defendant Egan-Jones Ratings Company is a privately-owned rating agency. Egan-Jones is incorporated in Delaware and maintains an office and conducts substantial business operations in New York, NY. Egan-Jones was Plaintiffs' "employer" within the meaning of New York law and within the meaning of the Dodd-Frank Act, the Sarbanes-Oxley Act, and all other applicable laws.

**ANSWER**: Defendants admit that EJR is a privately-owned rating agency, that it is incorporated in Delaware and that it maintains an office and conducts business operations in New York, NY. Defendants further admit that EJR was Plaintiffs' employer under the Dodd-Frank Act, the Sarbanes-Oxley Act, and the New York Labor Law. The remaining allegations set forth in Paragraph 7 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 7.

8.    Defendant Sean Egan is the founder, sole shareholder, and chief executive officer of Egan-Jones. Egan is the former chairman of Egan-Jones's board of directors, conducting business in New York, NY.

**ANSWER**: Defendants admit the allegations of Paragraph 8.

9.    Defendant Wenrong Hu was a senior employee of Egan-Jones, conducting business in New York, NY. Until her resignation on or about August 8, 2023, Hu served as the Director of Operational Development and as Chief Operating Officer, reporting directly to Egan. Until the hiring of a Head of Human Resources in or around May 2023, Hu was also responsible for the human resources function at Egan-Jones. Hu and Egan are married.

**ANSWER**: Defendants admit that Defendant Wenrong Hu ("Hu") formerly worked for EJR and conducted business in New York, NY. Defendants also admit that Hu performed certain Human Resources tasks during her employment. Defendants further admit that, at points in time prior to August 8, 2023, Hu served as the Director of Operational Development and as Chief Operating

4

Officer, reporting directly to Egan, until her resignation on August 8, 2023. Defendants further admit that Hu and Egan are married. Defendants deny the remaining allegations of Paragraph 9.

## JURISDICTION AND VENUE

10.    This action arises under the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1)(B)(i), and the Sarbanes-Oxley Act, 18 U.S.C. § 1514A(b)(1)(B). Accordingly, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 since this matter is founded on the existence of a federal question.

**ANSWER:** Defendants admit that the First Amended Complaint purports to seek relief under the

Dodd-Frank Act and the Sarbanes-Oxley Act. The remaining allegations set forth in Paragraph 10

contain characterizations, legal argument and conclusions to which no response is required. To

the extent that a response is required, Defendants deny the remaining allegations of Paragraph 10.

11.    Plaintiffs have satisfied all procedural and administrative requirements under 18 U.S.C. § 1514A of the Sarbanes-Oxley Act. Plaintiffs timely filed Sarbanes-Oxley Act complaints with the Occupational Safety and Health Administration ("OSHA"). One-hundred eighty days have elapsed since filing the complaints and no final order has been issued.

**ANSWER:** The allegations set forth in Paragraph 11 contain characterizations, legal arguments

and conclusions to which no response is required. To the extent a response is required, Defendants

admit that Plaintiffs have satisfied their procedural and administrative requirements under

18 U.S.C. § 1514A(b)(1)(B) of the Sarbanes-Oxley Act because more than 180 days have elapsed

since each Plaintiff filed his complaint at OSHA, but Defendants deny that Plaintiffs' SOX claims

were timely filed with OSHA or in this lawsuit with respect to any factual allegations that pre-date

September 16, 2023. Defendants deny the remaining allegations in Paragraph 11.

12.    Jurisdiction over Defendants, and each of them, exists because Egan-Jones is present and operates an office within the jurisdictional limits of New York, NY and the judicial jurisdiction of this Court. Nearly all of Egan-Jones's activity involving interaction with clients and regulators takes place in Egan-Jones's office located in New York, NY, and Egan-Jones's policies recognize that it is "subject [to] . . . state and local laws of each of EJR's offices." In addition, Egan-Jones is examined annually by a team of examiners from the New York Regional Office of the SEC, and some of Plaintiffs' internal and external reports of wrongdoing that give rise to this Complaint took place at Egan-Jones's office in New York, NY. Egan traveled to New York for in-person meetings of the board of directors, including the September 2023 meeting in

which one of the Plaintiffs reported concerns regarding potential violations of federal securities law before he was terminated.

**ANSWER:**  Defendants admit that they conduct business in New York, NY, and that Egan attended in-person meetings of the Board of Directors from time to time.  The remaining allegations set forth in Paragraph 12 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 12.

13.    This Court has pendent jurisdiction over related state law claims under 28 U.S.C. § 1367(a).

**ANSWER:**  The allegations set forth in Paragraph 13 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 13.

14.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because substantial occurrences giving rise to this Complaint occurred in this District.

**ANSWER:**  The allegations set forth in Paragraph 14 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 14.

## STATEMENT OF FACTS

### A.    BACKGROUND

### I.    As a Nationally Recognized Statistical Rating Organization, Egan-Jones is Statutorily Required to Manage Conflicts of Interest

15.    Egan-Jones is a nationally recognized statistical rating organization ("NRSRO") registered with the SEC under Section 15E of the Securities Exchange Act of 1934 ("Exchange Act") for certain asset classes.

**ANSWER:**  Defendants admit the allegations of Paragraph 15.

16.    The Exchange Act, as amended by the Dodd-Frank Act, and SEC rules promulgated thereunder impose certain requirements on NRSROs, including as to governance and the maintenance of effective controls to eliminate conflicts of interest.

774701533

a. <u>Conflicts of interest</u>: The Dodd-Frank Act directed the SEC to "issue rules to prevent the sales and marketing considerations of a [NRSRO] from influencing the production of ratings by the [NRSRO]." *See* 15 U.S.C. § 78o-7(h)(3)(A). The SEC adopted Rule 17g-5 of the Securities Exchange Act of 1934 ("Rule 17g-5") for the purpose of insulating rating analysts from business pressures by separating rating agencies' business-development function from their analytical function.[1]

b. <u>Effective Controls</u>: Section 15E(h)(1) of the Exchange Act requires an NRSRO to establish, maintain, and enforce written policies and procedures reasonably designed to address and manage any conflicts of interest that can arise from such business. 15 U.S.C. § 78o-7(h)(1).

c. <u>Designated Compliance Officer</u>: Section 15E(j)(1) of the Exchange Act requires an NRSRO to designate a compliance officer responsible, among other things, for administering the policies and procedures of the NRSRO established pursuant to section 15E(h) of the Exchange Act (to address and manage conflicts of interest) and for ensuring compliance with all applicable securities laws, rules, and regulations. 15 U.S.C. § 78o-7(j)(1).

d. <u>Annual Examinations</u>: Sections 932(a)(8) and (a)(4) of the Dodd-Frank Act, respectively, amended Section 15E of the Exchange Act to require the OCR to conduct annual examinations of NRSROs to review the management of conflicts of interest, internal controls, governance, and implementation of its policies, procedures, and rating methodologies. *See* 15 U.S.C. § 78o-7(p)(3); 15 U.S.C. § 78o-7(h)(4)(B). Examination findings that, in the view of the SEC staff, rise to the level of "material regulatory deficiencies" are identified in the annual inspection report to Congress. *See* 15 U.S.C. § 78o-7(p)(3)(C).

**ANSWER**: Defendants admit that the Exchange Act and Dodd-Frank Act, each of which speaks for itself, impose certain requirements on NRSROs like EJR. Defendants deny all allegations in Paragraph 16 to the extent they inaccurately characterize or otherwise are inconsistent with the Exchange Act and Dodd-Frank Act. The remaining allegations set forth in Paragraph 16 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 16.

---

[1] Rule 17g-5(c) states that an NRSRO "is prohibited from having the following conflicts of interest relating to the issuance or maintenance of a credit rating as a credit rating agency . . . . (8) The [NRSRO] issues or maintains a credit rating where a person within the [NRSRO] who participates in determining or monitoring the credit rating, or developing or approving procedures or methodologies used for determining the credit rating, including qualitative and quantitative models, also: (i) Participates in sales or marketing of a product or service of the [NRSRO] or a product or service of an affiliate of the [NRSRO]; or (ii) is influenced by sales or marketing considerations." *See* 17 CFR § 240.17g-5.

17.    Pursuant to the above-referenced statutory and regulatory requirements, Egan-Jones is obligated to maintain written policies and procedures reasonably designed to address and manage any conflicts of interest, and Egan-Jones issued "Policies and Procedures to Address and Manage Conflicts of Interest," which among other things:

    a.  Define a series of "prohibited conflicts" in a manner derived from Rule 17g-5(c), which include any effort to "Issue or maintain a credit rating where a person within the Firm who participates in determining or monitoring the credit rating, or developing or approving procedures or methodologies used for determining the credit rating, including qualitative and quantitative models, also: (i) Participate in sales or marketing of a product or service of the Firm or a product or service of an affiliate of the Firm; or (ii) Is influenced by sales or marketing considerations."

    b.  Require those who "observe or become aware of any conduct that you believe is unethical or improper" to "communicate that information to the Firm's ownership, compliance officer (DCO), counsel, or to the 24-hour independently operated helpline."

    c.  Prohibit retaliation for reports or complaints regarding the misconduct of others. Specifically, "The firm prohibits and will not tolerate any kind of retaliation or retribution for reports or complaints (internally or via the independent helpline) regarding firm misconduct or the misconduct of others that were made in good faith."

**ANSWER**:  Paragraph 17 purports to characterize the requirements of the Exchange Act and Dodd-Frank Act, each of which speaks for itself.  Defendants deny all allegations in Paragraph 17 to the extent they inaccurately characterize or otherwise are inconsistent with the respective requirements of the Exchange Act and the Dodd-Frank Act.  The remaining allegations set forth in Paragraph 17 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 17.

## II.    Egan-Jones Settles SEC Charges That It Violated Statutory and Regulatory Conflict-of-Interest Provisions

18.    On June 21, 2022, Egan-Jones and Egan settled an SEC enforcement proceeding following a multi-year investigation.  *See In the Matter of Egan-Jones Rating Company and Sean Egan*, Release No.  34-95127 (June 21, 2022) (hereinafter the "SEC Order").  The SEC allegations underlying the SEC Order spanned the time period of 2016 through mid-2019.

**ANSWER**:  Defendants admit that they entered into the SEC Order, which speaks for itself, on June 21, 2022.  Defendants deny all allegations in Paragraph 18 to the extent they inaccurately characterize or otherwise are inconsistent with the SEC Order.

19.     According to the allegations contained in the SEC Order, which Egan-Jones and Egan settled without admitting or denying, Egan-Jones and Egan violated several statutory and regulatory conflict-of-interest provisions, including:

   a.  Egan-Jones violated Rule 17g-5(c)(8)(i) by issuing and maintaining a credit rating for a client where Egan had participated in determining the credit rating at issue and engaged in sales and marketing activities with respect to that client.  SEC Order ¶ 1.

   b.  Egan-Jones violated Rule 17g-5(c)(8)(ii) because Egan had been influenced by sales or marketing considerations at the time that he participated in determining the credit rating.  SEC Order ¶ 1.

   c.  Egan-Jones violated Rule 17g-5(c)(1), a conflict-of-interest rule that prohibits an NRSRO from issuing or maintaining a credit rating solicited by a person who, in the most recently ended fiscal year, provided the NRSRO with net revenue equaling or exceeding ten percent of the total net revenue of the NRSRO for that fiscal year.  SEC Order ¶ 2.

   d.  Egan-Jones violated Section 15E(h)(1) of the Exchange Act because it failed to establish, maintain, and enforce policies and procedures reasonably designed to manage conflicts of interest.  SEC Order ¶ 3.

   e.  Egan caused Egan-Jones's violation of Rules 17g-5(c)(8)(i) and (ii).  SEC Order ¶ 1.

**ANSWER**:  Defendants admit that they entered into the SEC Order, which speaks for itself, on June 21, 2022.  Defendants deny all allegations in Paragraph 19 to the extent they inaccurately characterize or otherwise are inconsistent with the SEC Order.  The remaining allegations set forth in Paragraph 19 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 19.

20.    Among the remedies embodied in the SEC Order,

a.    Egan-Jones agreed to "prohibit Egan from participating directly or indirectly in (a) determining or monitoring any credit rating issued or maintained by Egan-Jones or (b) developing or approving procedures or methodologies used for determining credit ratings issued or maintained by Egan-Jones, including qualitative and quantitative models." SEC Order ¶ 69.

b.    Egan-Jones agreed to engage an independent consultant (the "Independent Consultant"), who would be required to conduct a comprehensive review of Egan-Jones's written policies and procedures intended to address and manage conflicts of interest and issue a report concerning the relevant findings. SEC Order ¶ 68.

c.    Sixty days following the receipt of the Independent Consultant's final report, the chief executive officer and Designated Compliance Officer of Egan-Jones were required to certify in writing, under penalty of perjury, that Egan-Jones complied with its obligations under the SEC Order. SEC Order ¶ 72.

**ANSWER**: Defendants admit that they entered into the SEC Order, which speaks for itself, on June 21, 2022. Defendants deny all allegations in Paragraph 20 to the extent they inaccurately characterize or otherwise are inconsistent with the SEC Order or Defendants' obligations pursuant to the SEC Order.

21.    On June 29, 2022, pursuant to Paragraph 69 of the SEC Order and "to supplement the firm's existing policies and procedures designed to address the restrictions set forth in Rule 17g-5," Egan-Jones implemented its Roles and Responsibilities Limitations: Supplemental Policies and Procedures ("Roles and Responsibilities Limitations") which were intended to limit the roles of Egan and family members. Under the policy, Egan and his family members employed at Egan-Jones "shall be prohibited from participating directly or indirectly, regardless of capacity, in (a) determining or monitoring any credit rating issued or maintained by the firm or (b) developing or approving procedures or methodologies used for determining credit ratings issued or maintained by the firm, including qualitative and quantitative models." In addition to these general prohibitions, the Roles and Responsibilities Limitations also spelled out more specific prohibitions on conduct involving credit ratings, credit rating methodologies, and credit models. The Roles and Responsibilities Limitations also required the Designated Compliance Officer to report periodically to Egan-Jones's board of directors on compliance with the prohibitions contained in the policy.

**ANSWER**: Defendants admit that, pursuant to the SEC Order, EJR implemented the "Roles and Responsibilities Limitations: Supplemental Policies and Procedures" which was jointly issued by EJR's Legal and Compliance Departments on July 27, 2022, and revised thereafter, as applicable,

from time to time. Defendants deny all allegations in Paragraph 21 to the extent they inaccurately characterize or otherwise are inconsistent with "Roles and Responsibilities Limitations: Supplemental Policies and Procedures."

22.    On August 1, 2022, pursuant to Paragraph 68 of the SEC Order, Egan-Jones retained Richard H.  Girgenti (d/b/a IDPL Consulting, LLC) as the Independent Consultant and K2 Integrity to support the work of the Independent Consultant.  On December 18, 2022, pursuant to Paragraph 68(b)(iv) of the SEC Order, the Independent Consultant submitted an initial report to Egan-Jones's board of directors and senior management and to the SEC.  On August 25, 2023, pursuant to Paragraph 68(b)(vi) of the SEC Order, the Independent Consultant submitted a final report to Egan-Jones and to the SEC.

**ANSWER**:  Defendants admit the allegations of Paragraph 22, except to state that the Independent Consultant issued its initial report on December 19, 2022, not on December 18, 2022.

### III.    Egan-Jones Hires Plaintiffs After Settling Earlier SEC Charges That It Violated Statutory and Regulatory Conflict-of-Interest Provisions

23.    Both Plaintiffs were initially hired by Egan-Jones after the alleged violations of law underlying the SEC Order occurred and as part of Egan-Jones's purported efforts to improve its controls pertaining to the management of conflicts of interest in compliance with SEC expectations and applicable law as ultimately embodied in the SEC Order.

**ANSWER**:  Defendants state that the SEC Order speaks for itself.  The remaining allegations set forth in Paragraph 23 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 23.

#### i.    Egan-Jones Hires Mr. Brawer

24.    Egan-Jones hired Mr. Brawer in November 2019 as the Designated Compliance Officer and Chief Risk Officer.  Mr. Brawer was hired to strengthen Egan-Jones's Compliance function during the SEC investigation into Egan-Jones's potential violation of SEC rules designed to manage conflicts of interest by NRSROs.  Mr. Brawer replaced a predecessor who was terminated shortly after Mr. Brawer's start date with Egan-Jones.

**ANSWER**:  Defendants admit that EJR hired Brawer in November 2019 as the Designated Compliance Officer and Chief Risk Officer.  Defendants further admit that Brawer's predecessor's employment ended shortly after Brawer joined EJR.  The remaining allegations set forth in

Paragraph 24 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 24.

25.    As the Designated Compliance Officer, pursuant to Section 15E(j)(1) of the Exchange Act, Mr. Brawer was responsible for monitoring the compliance of Egan-Jones with applicable securities laws, rules, and regulations, administering the policies and procedures of Egan-Jones established, among other things, pursuant to Section 15E(h) of the Exchange Act (to address and manage conflicts of interest), and detecting and reporting material compliance failures.

**ANSWER**: Paragraph 25 purports to characterize Section 15E(j)(1) of the Exchange Act, which speaks for itself. Defendants deny all allegations in Paragraph 25 to the extent they inaccurately characterize or otherwise are inconsistent with Section 15(E)(j)(1) of the Exchange Act. The remaining allegations set forth in Paragraph 25 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 25.

26.    Mr. Brawer supervised approximately five Compliance professionals (including employees and contractors) and reported to the board of directors, including Egan. Mr. Brawer's salary was set by Hu in consultation with the Independent Directors.

**ANSWER**: Defendants admit that Brawer reported to the Board of Directors, of which Egan is a member, and that Brawer supervised multiple Compliance professionals during his tenure at EJR. Defendants deny the remaining allegations of Paragraph 26.

ii.    Egan-Jones Hires Mr. Galgano

27.    Egan-Jones hired Mr. Galgano in January 2020 as a Senior Director, and he was later promoted to Head of the Ratings analytical function. Mr. Galgano was hired as part of the purported efforts by Egan-Jones to address the series of deficiencies identified by the SEC regarding how Egan-Jones managed conflicts of interest. Specifically, Mr. Galgano was hired to separate Egan's previously overlapping ownership, business development, and ratings analytical roles. Soon after Mr. Galgano joined Egan-Jones, Egan was supposed to separate himself from any responsibilities for the ratings analytical function.

**ANSWER**: Defendants admit that EJR hired Galgano in January 2020 as a Senior Director, Ratings Group and that he later took on the role of overseeing Ratings. The allegations set forth in

774701533

Paragraph 27 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 27.

28.    As the Head of the Ratings analytical group, Mr. Galgano was committed to adhering to Egan-Jones's established procedures and methodologies for determining credit ratings and keeping analytical decisions free from prohibited conflicts of interest.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 28 and therefore deny them.

29.    Mr. Galgano oversaw approximately 26 analysts (including employees and contractors) responsible for issuing Egan-Jones's credit ratings. Mr. Galgano reported to Egan.

**ANSWER**: Defendants admit that Galgano supervised various analysts from time to time. Defendants also admit that Galgano initially reported to Egan, and then, following the SEC Order, Galgano reported to the independent members of EJR's Board of Directors for substantive issues and to Egan for administrative issues. Defendants deny the remaining allegations of Paragraph 29.

## B.    EGAN-JONES'S ONGOING VIOLATIONS OF LAW IN THE RATINGS PROCESS

30.    Plaintiffs accepted their positions at Egan-Jones based upon representations by Egan and others that Plaintiffs would hold important responsibilities and authority to strengthen and maintain compliance at Egan-Jones with federal statutes, rules, and relevant policies. Upon joining Egan-Jones, Plaintiffs made efforts so that Egan-Jones would issue high-quality ratings not subject to commercial influence.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 30 and therefore deny them. Further, the allegations of Paragraph 30 contain  characterizations, legal argument and conclusions to which no response is required.

31.    In contravention of their expectations, Plaintiffs repeatedly observed conduct at Egan-Jones that Plaintiffs actually and reasonably believed constituted violations of federal securities laws and regulations governing NRSROs, including but not limited to Section 15E(h)(1)

of the Exchange Act, Rule 17g-5(c), and the SEC Order.  Such violations, which are described in greater detail below, included at least the following: (1) Egan's and Hu's application of business pressure on analytical staff to alter indicative ratings in order to induce customers to engage Egan-Jones to issue final ratings; (2) Egan's and Hu's application of business pressure on analytical staff to change Egan-Jones ratings to create the false appearance of more accurate Egan-Jones ratings when compared with the ratings of other rating agencies; (3) Egan's and Hu's violation of Egan-Jones's policies established to manage conflicts of interest in connection with rating actions; (4) Egan's and Hu's application of business pressure on analytical staff to downgrade credit ratings within the banking sector; (5) Egan's and Hu's knowing misrepresentations to SEC staff regarding Hu's role; and (6) the existence of a points system for rating analysts that interjected sales and marketing considerations into the ratings analytical process.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind and accordingly deny such allegations of Paragraph 31. The remaining allegations set forth in Paragraph 31 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 31.

### I.    Business Pressure on Analysts to Provide Favorable Indicative Ratings to Potential Clients

32.    One of the lines of business at Egan-Jones is the provision of private credit ratings for private transactions of individual clients.  At times, Egan-Jones initially offers preliminary "indicative" ratings feedback to potential clients.  If the potential client, after obtaining the preliminary rating feedback, proceeds to engage Egan-Jones on the private transaction, the client obtains a formal "final" credit rating from Egan-Jones for the transaction.

**ANSWER**:  Defendants admit the allegations of Paragraph 32.

33.    In 2021, the Ratings analytical team was asked to provide an indicative rating on a certain private real estate transaction.  Pursuant to standard operating procedures, at first the analysts calculated a preliminary rating for the transaction based on Egan-Jones's analytic model. Then, after conducting research on the subject property, the analysts elected to move down the indicative rating from the earlier model-implied rating in order to reflect certain negative attributes of the surrounding geographic area that were not captured by the analytic model.  The team of analysts then provided the indicative rating to the potential client.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33 and therefore deny them.

34.    Shortly thereafter, Egan called Mr. Galgano and stated that the client was not happy with the indicative rating and had complained to Egan.  Egan asked Mr. Galgano to explain why

the indicative rating was moved down from the higher model-implied rating. Egan pressured Galgano to provide the potential client with the higher model-implied indicative rating, rather than a lower rating that the rating committee members believed accounted for certain negative qualitative attributes of the subject property. Mr. Galgano declined to do as asked. Mr. Galgano understands that potential client did not move forward with Egan-Jones for a final rating.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations in Paragraph 34 and therefore deny them.

35.     Subsequently, in or about October 2021, in a weekly management meeting, which included Mr. Galgano, Hu, and Egan, Hu remarked in sum and substance that not enough of Egan-Jones's potential clients that had received indicative ratings were engaging Egan-Jones to issue final ratings and Hu pressured Mr. Galgano to contact multiple potential clients that had received indicative ratings from Egan-Jones (but had not engaged Egan-Jones to provide a final rating) and to offer to provide them with an updated (i.e., higher) indicative rating.

**ANSWER**: Defendants deny the allegations of Paragraph 35.

36.     At the meeting, Mr. Galgano refused Hu's request because Hu sought to inject business influence into the analytical process in violation of Rule 17g-5(c)(8)(ii) and Egan-Jones "Policies and Procedures to Address and Manage Conflicts of Interest." Mr. Galgano warned Hu at the meeting that Hu was "crossing the line" of permissible conduct.

**ANSWER**: The allegations set forth in Paragraph 36 contain characterizations, legal argument

and conclusions to which no response is required. To the extent that a response is required,

Defendants deny the allegations of Paragraph 36.

## II.     **Business Pressure on Analysts to Change Subscription Ratings to Align with Those of Other Rating Agencies**

37.     In addition to private ratings, Egan-Jones offers unsolicited ratings on public companies' credit quality on a subscription basis. Egan-Jones has a longstanding practice of publishing an annual Hits and Misses report which "aims to measure the extent to which the major rating firms converge toward [Egan-Jones's] rating" for public companies. *See* https://www.Egan-Jones.com/about-us/company-overview/. Credit ratings of public companies by other rating agencies (principally, Standard & Poor's and Moody's) that move toward an Egan-Jones rating of the same companies are characterized as a "hit"; a move away is characterized as a "miss." Egan-Jones uses the Hits and Misses report, among other things, for marketing purposes. *See id.* ("Egan-Jones' accuracy has been proven by our record of Hits and Misses").

**ANSWER**: Defendants admit that EJR offers unsolicited ratings on public companies' credit

quality on a subscription basis. Paragraph 37 purports to characterize information set forth on

EJR's website regarding its Hits and Misses report, which speaks for itself. Defendants deny the allegations in Paragraph 37 to the extent they inaccurately characterize or otherwise are inconsistent with EJR's website. The remaining allegations set forth in Paragraph 37 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 37.

38.    Historically, the "hit" rate on the Hits and Misses report was over 90%. After Mr. Galgano joined Egan-Jones in 2020, and Egan purported to separate himself from analytical decisions, Egan-Jones's "hit" rate came down as analysts under Mr. Galgano's supervision followed Egan-Jones's analytical models with greater consistency.

**ANSWER**: The allegations set forth in Paragraph 38 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 38.

39.    As a result of the reduced "hit" rate, Egan and Hu instructed analytical staff to produce a greater number of "hits" for the purpose of the Hits and Misses report. For example, in or about March 2022, Egan called Mr. Galgano and complained that the Hits and Misses report contained a "hit" rate of 83%. After Mr. Galgano refused to modify any ratings or the ratings process in order to generate a greater number of "hits," Egan demanded a "solution" to increase the "hit" rate to above 90%. In or about March 2022, Hu also complained to two rating analysts that the "hit" rate was at an all-time low. Egan and Hu continued to raise concerns regarding the Hits and Misses report in conversations with Mr. Galgano and analytical staff.

**ANSWER**: The allegations set forth in Paragraph 39 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 39.

40.    Mr. Galgano actually and reasonably believed that Egan's and Hu's desire to maintain a high "hit" rate represented improper business pressure on analysts that constituted a likely violation of Rule's 17g-5(c)(8)(ii) and Egan-Jones's "Policies and Procedures to Address and Manage Conflicts of Interest."

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind and accordingly deny such allegations of Paragraph 40. The remaining allegations set forth in Paragraph 40 contain

characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 40.

### III.    Violation of Conflict-of-Interest Rules in Connection with an Individual Private Rating

41.    Under Egan-Jones's procedures intended to promote compliance with SEC Rule 17g-5, no meetings or phone calls may take place with clients that simultaneously involve both sales and analytical personnel of Egan-Jones. Specifically, Paragraph 9 of Egan-Jones's Marketing and Billing Procedures ("Marketing Procedures") permits both commercial staff and analytical staff to communicate together with a client for an introductory purpose, but not to both remain at the meeting for the substance of the discussion. No pricing or specific rating methodology may be discussed while both commercial staff and analytical staff are present on the client call.

**ANSWER**: Paragraph 41 purports to characterize SEC Rule 17g-5 and EJR's Marketing and Billing Procedures, each of which speaks for itself. Defendants deny all allegations in Paragraph 41 to the extent they inaccurately characterize or otherwise are inconsistent with SEC Rule 17g-5 or EJR's Marketing and Billing Procedures. The remaining allegations set forth in Paragraph 41 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 41.

42.    On September 21, 2022, a telephonic meeting about a potential new transaction was arranged with an Egan-Jones client that included both analytical and commercial staff of Egan-Jones. Mr. Brawer and a colleague from Compliance joined the call to monitor compliance with applicable law and Egan-Jones's Marketing Procedures.

**ANSWER**: Defendants admit that on September 21, 2022 a phone call was held with a client to discuss a potential new transaction, and that representatives from different departments of EJR participated on the call. The remaining allegations set forth in Paragraph 42 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 42.

43.    Consistent with the Marketing Procedures, after introductory remarks, Mr. Brawer asked the representative of Egan-Jones's commercial staff to leave the telephone call. However, Hu contradicted Mr. Brawer and insisted that the representative of Egan-Jones's commercial staff remain on the call with the analytical staff.

774701533

**ANSWER**:  Defendants admit that following general introductions, Brawer indicated that the representative from EJR's sales staff should drop from the call, and that Hu insisted that he remain on the call.  The remaining allegations set forth in Paragraph 43 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 43.

44.    Mr. Brawer stayed on the call to continue monitoring, but one of the analysts present on the call dropped off the telephonic meeting and immediately submitted a written complaint to Mr. Brawer that Hu had engaged in sales and marketing activities during the call on which analysts were present.

**ANSWER**:  Defendants admit that one of the analysts dropped from the call and sent Brawer an e-mail, which speaks for itself.  The remaining allegations set forth in Paragraph 44 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 44.

45.    Later in the day, Mr. Brawer advised Hu of the analyst's complaint, with a copy to Egan and the general counsel.  Mr. Brawer reminded Hu to comply with the Marketing Procedures and indicated that he would investigate the analyst's allegations.  Mr. Brawer also reminded Hu of the importance of complying with Egan-Jones's policies.

**ANSWER**:  Defendants admit that Brawer informed Hu in writing about the analyst's email, and that each of Brawer's email and the analyst's email speaks for itself.  Defendants also admit that Brawer's email copied Egan and EJR's General Counsel.  The remaining allegations set forth in Paragraph 45 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 45.

46.    On September 26, 2022, Mr. Brawer emailed the analytical staff, including Mr. Galgano, to advise that, as a remedial measure, the two analysts who attended the September 21, 2022 call with the client should not be involved in the subject rating for a period of 12 months.

**ANSWER**:  Defendants admit that on September 26, 2022, Brawer emailed Galgano and others, and that the email speaks for itself.  Defendants deny all allegations in Paragraph 46 to the extent they inaccurately characterize or otherwise are inconsistent with the email.  The remaining allegations set forth in Paragraph 46 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 46.

47.    On September 29, 2022, after an investigation, Mr. Brawer issued a memorandum which concluded that although Hu did not violate Rule 17g-5(c)(8) because no commercial terms were discussed on the call, Hu violated the Marketing Procedures.

**ANSWER**:  Defendants admit that EJR's General Counsel issued a memo on September 29, 2022, with input from Brawer, and that the memo speaks for itself.  Defendants deny all allegations in Paragraph 47 to the extent they inaccurately characterize or otherwise are inconsistent with the memo.  The remaining allegations set forth in Paragraph 47 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 47.

48.    Hu's violation of the Marketing Procedures impeded Egan-Jones's compliance with Section 15E(h)(1) of the Exchange Act, which requires an NRSRO to establish, maintain, and enforce written policies and procedures reasonably designed to address and manage any conflicts of interest and also inhibited Mr. Brawer ability to fulfill his statutory responsibility pursuant to Section 15E(j)(1) of the Exchange Act.

**ANSWER**:  The allegations set forth in Paragraph 48 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 48.

49.    As described in greater detail in ¶¶ 122-125, in retaliation for Mr. Brawer's efforts to enforce Egan-Jones's conflict-of-interest policies and report and investigate Hu's violation of the same, Hu repeatedly threatened Mr. Brawer's career.

**ANSWER**: The allegations set forth in Paragraph 49 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 49.

### IV.   Business Pressure on Analysts to Downgrade Credit Ratings Within the Banking Sector

50.   In the spring of 2023, following the failure of several large banks, Egan and Hu engaged in concerted efforts to compel the analytical staff to downgrade Egan-Jones's credit ratings in the banking sector in violation of conflict-of-interest regulations, the SEC Order, and Egan-Jones's compliance policies.

**ANSWER**: The allegations set forth in Paragraph 50 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 50.

#### i.   Events of March 2023

51.   On or about March 8, 2023, Silicon Valley Bank ("SVB") publicly announced that it would book a $1.8 billion loss after selling some of its investments to cover increasing withdrawals. Shortly thereafter, Moody's downgraded SVB's parent company, SVB Financial Group. On or about March 9, 2023, SVB's stock price fell by a substantial amount, and a growing number of SVB's clients sought to withdraw funds from the bank.

**ANSWER**: Upon information and belief, Defendants admit the allegations of Paragraph 51.

52.   On March 10, 2023, U.S. regulators seized control of SVB, and the ratings analytical staff at Egan-Jones placed SVB Financial Group on "credit watch."

**ANSWER**: Upon information and belief, Defendants admit that U.S. regulators seized control of SVB on or about March 10, 2023, and that on or about March 11, 2023, EJR downgraded SVB with a developing watch. Defendants admit the remaining allegations of Paragraph 52.

53.   On March 11, 2023, which was a Saturday, Egan and Hu telephoned Mr. Galgano and expressed concern that the analytical staff had not downgraded SVB Financial Group. Mr. Galgano explained that any rating action required a credit basis pursuant to Egan-Jones's analytical criteria and that no such analytical grounds existed at that time, *i.e.*, no new data or event had taken place to cause a ratings downgrade of SVB Financial Group pursuant to Egan-Jones's analytical criteria. Egan and Hu instructed Mr. Galgano that the analytical staff were required to take a ratings action before the morning of Monday, March 13, 2023.

**ANSWER**:  Defendants admit that on March 11, 2023, the Chairman of EJR's Board of Directors sent an email to Brawer, making a formal request for a review of all ratings with similar risk profile to SVB,  and that the email speaks for itself.  The remaining allegations set forth in Paragraph 53 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 53.

54.    On March 11, 2023, Egan and Hu also telephoned Mr. Brawer and directed Mr. Brawer to circumvent Mr. Galgano and instead to communicate directly with analytical staff supervised by Mr. Galgano.  In response, Mr. Brawer stated that he would refuse to withhold from Mr. Galgano, as head of the analytical team, any matters having a material impact on the work of the analytical team.

**ANSWER**:  Defendants admit that on March 11, 2023, the Chairman of EJR's Board of Directors sent an email to Brawer, making a formal request for a review of all ratings with similar risk profile to SVB.  The remaining allegations set forth in Paragraph 54 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 54.

55.    On March 12, 2023, Hu telephoned Mr. Brawer and directed him to contact analytical staff and to instruct them that they should cease updating bank credit ratings based solely on their own analytical judgment and should review information conveyed by the general counsel of Egan-Jones regarding any further bank ratings actions.  Mr. Brawer stated that he would not provide these instructions to analytical staff because such an instruction would violate SEC Rule 17g-5.  Hu abruptly ended the call.

**ANSWER**:   The allegations set forth in Paragraph 55 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 55.

56.    Also on March 12, 2023, Mr. Galgano learned from certain Egan-Jones analysts that Hu had called them and instructed them regarding how and with whom to hold bank rating committees, and that Hu instructed the analysts not to discuss these analytical matters with Mr. Galgano.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 56 and therefore deny them.  Further, the allegations set

forth in Paragraph 56 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 56.

57.    Subsequently, Egan-Jones downgraded the rating of SVB Financial Group, based upon the judgment of Egan-Jones analysts that its bankruptcy was forthcoming.  SVB Financial Group filed for Chapter 11 bankruptcy protection on March 17, 2023.  *See In re: SVB Financial Group*, Case No.  23-10367-mg (S.D.N.Y. Bankr.).

**ANSWER**:  Defendants admit that EJR's second downgrade of the rating of SVB Financial Group occurred on March 17, 2023.  Upon information and belief, Defendants further admit that SVB Financial Group filed for Chapter 11 bankruptcy protection on or about March 17, 2023.  The remaining allegations set forth in Paragraph 57 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 57.

ii.    Events of May 2023

58.    On May 1, 2023, federal regulators took over First Republic Bank and immediately sold it to JPMorgan Chase.  At or around this time, Egan and Hu engaged in additional efforts to effect an across-the-board downgrade of the banking sector by Egan-Jones analysts.

**ANSWER**:  Upon information and belief, Defendants admit that on or about May 1, 2023, Federal regulators took over First Republic Bank and sold it to JPMorgan Chase.  The remaining allegations set forth in Paragraph 58 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 58.

59.    On or about May 5, 2023, Hu telephoned Mr. Galgano and stated that the analytical staff needed to take downward rating actions in the banking sector and that Mr. Galgano needed to convene a ratings committee to effect such downgrades.  Mr. Galgano rejected Hu's instruction and stated, as before, that any rating action required a credit basis pursuant to Egan-Jones's analytical criteria and that no such analytical grounds existed at that time.

**ANSWER**:  The allegations set forth in Paragraph 59 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 59.

60.     On or about May 5, 2023, Mr. Galgano was informed by an analyst that Egan had called the analyst and communicated concern that Egan-Jones might be sued in the future, upon any bankruptcy of any rated bank, if Egan-Jones did not immediately downgrade its rating of all banks below investment grade.  Egan communicated to the analyst that placing banks on "credit watch" was deemed to be unacceptable to the board of directors of Egan-Jones.  The analyst understood, and conveyed to Mr. Galgano that the analyst understood, Egan to be applying pressure for the analyst to take an immediate negative rating action.  Upon information and belief, Egan conducted similar conversations with no fewer than three other analysts.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 60, including but not limited to the purported understandings of unidentified analysts, and therefore deny them. Defendants deny the remaining allegations of Paragraph 60.

61.     On May 5, 2023, Egan telephoned Mr. Galgano and emphasized that Egan-Jones analytical staff must "stay on top of market conditions." In the context of Hu's earlier call to Mr. Galgano, and informed of Egan's earlier call to an analyst, Mr. Galgano understood Egan to be pressuring the analytical staff to downgrade ratings in the banking sector.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Galgano's state of mind and accordingly deny such allegations of Paragraph 61.  The remaining allegations set forth in Paragraph 61 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 61.

62.     On May 5, 2023, Mr. Galgano convened a ratings committee of analytical staff and explained that rating actions could only be taken based on credit events consistent with Egan-Jones's analytical criteria.  The ratings committee determined to downgrade certain credit ratings in the banking sector but declined to make the sector-wide downgrades below investment grade that Egan and Hu had pressured to occur.

**ANSWER**:  Defendants admit that on May 5, 2023, a Ratings Review Committee met to discuss subscription bank ratings as it related to the continued sector weakness. Defendants further admit

that the RRC voted to downgrade 20 ratings in the banking sector.  The remaining allegations set forth in Paragraph 62 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 62.

63.    Mr. Brawer and Mr. Galgano each believed actually and reasonably that Egan's and Hu's pressure on analysts to downgrade credit ratings in the banking sector, both in March and in May, violated at least Rule 17g-5, the SEC Order, and Egan-Jones's policies.  Accordingly, as discussed below (*see ¶¶* 79-120), Plaintiffs separately reported their concerns about these violations internally within Egan-Jones and externally to the SEC.  As discussed further below (*see ¶¶* 121-140), Egan and Hu retaliated against Plaintiffs for their reports of misconduct.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind and actions and accordingly deny such allegations of Paragraph 63.  The remaining allegations set forth in Paragraph 63 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 63.

## V.    Misrepresentations to SEC Staff Regarding Hu's Role

### i.    The Investigation of Hu's Misrepresentation to the SEC

64.    On or about June 13, 2023, Hu directed Egan-Jones's head of Information Technology (the "IT executive") to falsely inform SEC staff, to the extent the SEC staff were to make an inquiry during an examination interview, that Hu did not manage the IT executive. Although the SEC examination team did not inquire on the subject and the IT executive did not make any misrepresentation, the IT executive filed an internal complaint to Compliance regarding Hu's instruction, which was referred to outside counsel for investigation.

**ANSWER**:  The allegations set forth in Paragraph 64 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 64.

65.    On or about June 16, 2023, Egan-Jones placed Hu on administrative leave pending the conclusion of the internal investigation by outside counsel.

**ANSWER**:  Defendants admit that Egan, on behalf of EJR, placed Hu on administrative leave on June 16, 2023. The remaining allegations set forth in Paragraph 65 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 65.

66.    As discussed below, Mr. Brawer immediately reported the allegation and the commencement of the investigation to the OCR examination team.  Mr. Brawer actually and reasonably believed that Hu's instruction to the IT executive (i) constituted fraud on the regulator, and (ii) circumvented Egan-Jones's internal control structure that is established, pursuant to Section 15E of the Exchange Act, to ensure compliance with federal securities laws and regulations.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Mr. Brawer's state of mind or actions based thereon, and accordingly deny such allegations of Paragraph 66.  The remaining allegations set forth in Paragraph 66 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 66.

ii.    <u>Egan-Jones Further Misrepresented Hu's Role to the SEC</u>

67.    As a result of the investigation of Hu's misrepresentation to the SEC, Hu nominally resigned from her position at Egan-Jones on or about August 9, 2023.  On the same day, Egan-Jones's general counsel informed the SEC staff of Hu's resignation.

**ANSWER**:  Defendants admit that on August 8, 2023 Hu resigned from EJR. Defendants further admit that on August 9, 2023, EJR's General Counsel informed the SEC staff of Hu's resignation. The remaining allegations set forth in Paragraph 67 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 67.

68.    On or about August 10, 2023, Egan and the general counsel announced Hu's termination to the analytical staff of Egan-Jones but stated that Hu would continue to provide unspecified "guidance and direction" to Egan-Jones.

**ANSWER**: Defendants admit that on or about August 10, 2023, Egan and EJR's General Counsel announced Hu's resignation to EJR's Analytical Team during a regularly scheduled, daily phone call. Defendants deny the remaining allegations of Paragraph 68.

69.     On or about October 23, 2023, an Egan-Jones sales manager called Mr. Brawer to express concern that a certain operations manager at Egan-Jones shared during that day's internal meeting that the operations manager was acting on a matter at the direction of Hu, demonstrating that Hu remained involved in Egan-Jones even following her resignation.

**ANSWER**: Defendants deny the allegations of Paragraph 69.

70.     On November 26, 2023, a former employee of Egan-Jones received an anonymous text message from a Philadelphia-region area code communicating a desire to recruit the former employee to return to Egan-Jones for a compliance officer position. The unwillingness of the sender to identify him or herself except as a member of the "recruit team," the particular writing style, and the Philadelphia region area code caused Mr. Brawer to suspect that the message was sent by Hu. On November 28, 2023, Mr. Brawer discussed the text message with Egan-Jones's sole Human Resources employee who stated that she was not aware of, nor would she have approved of, the text message to the former employee.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 70 regarding the content or an anonymous text message by an unidentified sender and therefore deny them. EJR admits that Brawer discussed the text message with EJR's Director of Human Resources, who neither was aware of the text message nor would have approved of anyone from EJR texting with a candidate concerning a job offer with EJR. EJR denies the remaining allegations of Paragraph 70.

71.     On December 18, 2023, Mr. Galgano discussed a candidate for an analytical position with the Head of Human Resources at Egan-Jones. The Head of Human Resources informed Mr. Galgano that she had spoken to an external executive recruiter for Egan-Jones concerning a certain candidate, and the executive recruiter stated that "Wen really liked" the candidate. The search for the role had commenced in or about September 2023, and Mr. Galgano understood the recruiter to be conveying that the candidate had been vetted by Hu subsequent to Hu's termination of employment from Egan-Jones on or about August 9, 2023.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Galgano's state of mind and accordingly deny such allegations of Paragraph 71. Defendants admit that on December 18, 2023, Galgano and EJR's

Director of Human Resources communicated via email about a candidate for a potential job with EJR, and that those emails speak for themselves. Defendants deny the remaining allegations of Paragraph 71.

72. As discussed below, Mr. Brawer and Mr. Galgano separately reported to the SEC the misrepresentation involving Hu because they actually and reasonably believed that Hu's concealed role (i) constituted fraud on the regulator, and (ii) circumvented Egan-Jones's internal control structure that is established, pursuant to Section 15E of the Exchange Act, to ensure compliance with federal securities laws and regulations.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and accordingly deny such allegations of Paragraph 72. The remaining allegations set forth in Paragraph 72 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 72.

## VI. Points System for Rating Analysts that Interjected Sales and Marketing Considerations into the Ratings Process

73. Since at least July 2020, at the urging of Hu, Egan-Jones maintained a system to measure the productivity of its analytical staff (hereinafter, the "points system").

**ANSWER**: Defendants admit that since approximately May 2020, EJR maintained a points system to measure the quality and productivity of its analysts. The remaining allegations set forth in Paragraph 73 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 73.

74. Under the points system, analysts earned points for completing certain rating activities and were required to accrue at least 40-points per week. Points were not earned for a deal on which Egan-Jones did not issue a rating, regardless of the amount of time spent by the analyst on the deal, and the points earned did not align with the amount of work involved.

**ANSWER**:  Defendants admit that analysts formerly earned points for completing certain rating activities.  The remaining allegations set forth in Paragraph 74 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 74.

75.    Mr. Galgano actually and reasonably believed that the points system interjected sales and marketing considerations improperly into the ratings process in violation of Rule 17g-5(c)(8) and Egan-Jones's policies.  As described below, Mr. Galgano shared his concerns internally at Egan-Jones and communicated them with the SEC staff in May 2023.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 75 and therefore deny them.

76.    In late September 2023, after the SEC staff concluded in an examination letter that the existence of points system constituted a material regulatory deficiency, Mr. Brawer investigated the points system further and discovered that Egan-Jones made $100 - $300 monthly "award" payments to analysts based on the points system and outside of the ordinary-course annual salary and annual bonus compensation practices of Egan-Jones.  Mr. Brawer's review of the board minutes demonstrated that Hu did not share information about these monthly award payments during board meetings in which members of the board were supposed to oversee Egan-Jones's compensation and promotion policies and practices.

**ANSWER**:  Defendants admit that on September 29, 2023, EJR received a letter from the SEC regarding the Staff's Findings and Recommendations from its 2023 Examination of EJR (the "2023 SEC Examination Findings and Recommendations").  Paragraph 76 purports to characterize the 2023 SEC Examination Findings and Recommendations, which speak for themselves.  Defendants deny all allegations in Paragraph 76 to the extent they inaccurately characterize or otherwise are inconsistent with the 2023 SEC Examination Findings and Recommendations.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Brawer's state of mind or actions based thereon, and accordingly deny such allegations of Paragraph 76.  The remaining allegations set forth in Paragraph 76 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 76.

774701533

77.     Mr. Brawer actually and reasonably believed that Hu's failure to inform the board of directors about the points system and "award" payments violated Section 932 of the Dodd-Frank Act, which requires a NRSRO's board of directors to oversee "the compensation and promotion policies and practices" of the NRSRO.  *See* 15 U.S.C. 78o-7(t)(3)(D).  Because Hu failed to disclose the points system to the board of directors, the board was unable to provide effective oversight in a manner required by the Dodd-Frank Act.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Brawer's state of mind and accordingly deny such allegations of Paragraph 77.   The remaining allegations set forth in Paragraph 77 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 77.

78.     In addition, Mr. Brawer actually and reasonably believed that the practice interjected sales and marketing considerations improperly into the ratings process in violation of Rule 17g-5(c)(8).  In Mr. Brawer's reasonable belief, the practice also violated internal Egan-Jones policies designed to put the above rules into effect.  As described in ¶ 115, Mr. Brawer reported his concerns about the awards payment to the SEC, and, on October 2, 2023, Mr. Brawer instructed the director of Accounting to eliminate the practice from Egan-Jones's payroll systems.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Brawer's state of mind or actions based thereon, and accordingly deny such allegations of Paragraph 78.   The remaining allegations set forth in Paragraph 78 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 78.

### C.    PLAINTIFFS REPORTED WHAT THEY ACTUALLY AND REASONABLY BELIEVED TO BE VIOLATIONS OF LAW AT EGAN-JONES

79.     Plaintiffs repeatedly raised concerns about what they actually and reasonably believed to be violations of applicable securities laws and regulations to internal and external stakeholders.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and

accordingly deny such allegations of Paragraph 79. The remaining allegations set forth in Paragraph 79 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 79.

80.     Specifically, Plaintiffs raised their concerns contemporaneously with executive management and in-house counsel at Egan-Jones on multiple occasions between 2021 and 2023. When Egan-Jones's executive management failed to address Plaintiffs' concerns, Plaintiffs also raised their concerns directly with the board of directors and with outside counsel hired by the board to conduct an internal investigation into certain potential violations. Plaintiffs also communicated their concerns in interviews with the Independent Consultant hired pursuant to the SEC Order. Finally, Plaintiffs reported their concerns to the SEC, including the OCR, the Office of the Whistleblower, and the Division of Enforcement.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' actions and accordingly deny such allegations of Paragraph 80. Defendants admit that the independent members of the Board of Directors retained outside counsel in 2023 to investigate certain allegations, and that each Plaintiff was interviewed by such counsel. The remaining allegations set forth in Paragraph 80 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 80.

I.     **Plaintiffs' Reports to Executive Management and In-House Counsel**

81.     Plaintiffs, actually and reasonably believed that by engaging in the conduct described above, Egan and Hu had violated Section 15E of the Exchange Act, Rule 17g-5, the SEC Order, and Egan-Jones's compliance policies. Accordingly, Plaintiffs contemporaneously and repeatedly objected to Egan's and Hu's improper instructions and refused to participate in such conduct.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind and actions and accordingly deny such allegations of Paragraph 81. The remaining allegations set forth in Paragraph 81 contain

characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 81.

82.    In or about October 2021, in connection with Hu's pressure on analysts to alter indicative ratings for prospective clients (*see* ¶¶ 32-36), Mr. Galgano refused Hu's request to contact clients to offer to provide an updated (i.e., higher) indicative rating as Hu requested. Mr. Galgano believed that Hu sought to improperly inject business influence into the analytical process in violation of 17g-5(c)(8)(ii).  Mr. Galgano told Hu that she was "crossing the line" of appropriate conduct.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind and actions and accordingly deny such allegations of Paragraph 82. The remaining allegations set forth in Paragraph 82 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 82.

83.    On or about March 9, 2022, in connection with Egan's pressure to increase the "hits" rate (*see* ¶¶ 37-40), Mr. Galgano rejected Egan's request.  Believing that Egan's conduct was a likely violation of Rule 17g-5(c)(8)(ii), Mr. Galgano responded to Egan that he would not allow ratings determinations by the analytical staff to be influenced by Egan's desire to achieve a particular result in the Hits and Misses report.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Galgano's state of mind and actions and accordingly deny such allegations of Paragraph 83. The remaining allegations set forth in Paragraph 83 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 83.

84.    On or about September 21, 2022, in connection with Hu's insistence earlier that day that a representative of Egan-Jones's commercial staff remain on a call with the analytical staff and a client (*see* ¶¶ 41-49), Mr. Brawer initiated an investigation into the allegation that Hu violated the Marketing Procedures.  Later the same day, Mr. Brawer informed Egan (with Hu present on the call) that Hu had willfully violated, and had instructed the representative of Egan-Jones's commercial staff to violate, the Marketing Procedures.  On or around September 29, 2022, Mr. Brawer issued a memorandum concluding after an investigation that Hu violated the Marketing Procedures.  The violation of the Marketing Procedures also violated Section 15E(h)(1) of the Exchange Act, which requires an NRSRO to establish, maintain, and enforce written policies and procedures reasonably designed to address and manage any conflicts of interest, and the

violation inhibited Mr. Brawer ability to fulfill his statutory responsibility in Section 15E(j)(1) of the Exchange Act.

**ANSWER**:  Defendants admit that on September 29, 2022, EJR's General Counsel, with input

from Brawer, issued a memorandum regarding the September 21, 2022 call, and that Brawer, with

the General Counsel, spoke to Egan and Hu on September 21.  Defendants deny all allegations in

Paragraph 84 to the extent they inaccurately characterize or otherwise are inconsistent with the

memo.  Defendants lack knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations concerning Brawer's state of mind and actions and accordingly deny such

allegations of Paragraph 84. The remaining allegations set forth in Paragraph 84 contain

characterizations, legal argument and conclusions to which no response is required.  To the extent

that a response is required, Defendants deny the remaining allegations of Paragraph 84.

85.    Mr. Galgano and Mr. Brawer both objected contemporaneously to Egan's and Hu's efforts to downgrade Egan-Jones's credit rating of SVB Financial Group (*see* ¶¶ 51-57).  On Saturday, March 11, 2023, in response to a request to downgrade SVB Financial Group by morning of Monday, March 13, 2023, Mr. Galgano explained to Egan and Hu that any rating action required a credit basis pursuant to Egan-Jones's analytical criteria and that no such analytical grounds existed at that time, *i.e.*, no new data or event had taken place to cause a ratings downgrade of SVB Financial Group pursuant to Egan-Jones's analytical criteria.  When Egan and Hu telephoned Mr. Brawer the same day and directed Mr. Brawer to circumvent Mr. Galgano and instead to communicate directly with analytical staff supervised by Mr. Galgano, Mr. Brawer refused to withhold from Mr. Galgano, as head of the rating analytical team, any matters having a material impact on the work of the analytical team.

**ANSWER**:  Defendants admit that on March 11, 2023, the Chairman of EJR's Board of Directors

sent an email to Brawer, making a formal request for a review of all ratings with similar risk profile

to SVB.  Defendants lack knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and

accordingly deny such allegations of Paragraph 85. The remaining allegations set forth in

Paragraph 85 contain characterizations, legal argument and conclusions to which no response is

required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 85.

86.     On Sunday, March 12, 2023, when Hu telephoned Mr. Brawer and directed him to instruct analytical staff to cease updating bank credit ratings solely in accordance with the judgment of the analytical staff and to review information conveyed by the general counsel of Egan-Jones regarding any further ratings actions, Mr. Brawer stated contemporaneously that he would not provide these instructions to analytical staff due to the requirement that Egan-Jones maintain the integrity of its ratings process.  Hu abruptly ended the call.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Brawer's state of mind or actions based thereon, and accordingly deny such allegations of Paragraph 86. The remaining allegations set forth in Paragraph 86 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 86.

87.     On or about March 13, 2023, Mr. Brawer expressed repeated concerns during a meeting that included analytical staff, Mr. Brawer, Egan and Hu that Egan's conduct would violate Rule 17g-5(c)(8) because Egan was directing a discussion pertaining to the analysis of credit ratings during the meeting, while holding a business role.  In response, Egan stated that he refused to comply with Mr. Brawer's advice not to discuss analytical matters with analytical staff.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Brawer's state of mind or actions based thereon, and accordingly deny such allegations of Paragraph 87. The remaining allegations set forth in Paragraph 87 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 87.

88.     On or about May 5, 2023, Mr. Galgano objected when Hu insisted that the analytical staff downgrade ratings in the banking sector (*see* ¶¶ 58-63) because Mr. Galgano believed that Hu sought to inject business influence improperly into the analytical process in violation of 17g-5(c)(8)(ii).

774701533

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Galgano's state of mind or actions based thereon, and accordingly deny such allegations of Paragraph 88. The remaining allegations set forth in Paragraph 88 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 88.

89.    On August 28, 2023, Brawer informed Egan that he was unable in good faith to fulfill his obligation under the SEC Order to certify under penalty of perjury that Egan-Jones has complied with all aspects of the SEC Order in view of his conclusion that Egan violated 17-g5(c)(8) directly and also indirectly (through Hu) by pressuring analysts to downgrade ratings in the banking sector in May 2023.

**ANSWER**:  Defendants admit that on August 28, 2023, Brawer emailed Egan, with EJR's General Counsel on copy, regarding the SEC Order Certification, and that the email speaks for itself. Defendants deny all allegations in Paragraph 89 to the extent they inaccurately characterize or otherwise are inconsistent with Brawer's August 28, 2023 email. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Brawer's state of mind or actions based thereon, and accordingly deny such allegations of Paragraph 89. The remaining allegations set forth in Paragraph 89 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 89.

90.    In connection with Hu's pressure to follow the points system (*see* ¶¶ 73-78), Mr. Galgano on multiple occasions, including at the weekly management meetings, objected to Hu and expressed his view that the points system was not an appropriate manner in which keep track of ratings analytic work.  Mr. Galgano said that following the points system would sacrifice credit quality.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Galgano's state of mind or actions based thereon, and accordingly deny such allegations of Paragraph 90. The remaining allegations set forth in

Paragraph 90 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 90.

## II.  Plaintiffs' Reports to the Board of Directors

91.     Concerned that objecting contemporaneously to Egan and Hu or reporting misconduct to them was futile, both Mr. Galgano and Mr. Brawer also reported their concerns regarding potential violations of securities laws and regulations to the board of directors and to outside counsel retained by board to investigate potential misconduct.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and accordingly deny such allegations of Paragraph 91. The remaining allegations set forth in Paragraph 91 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 91.

92.     In the second or third quarter of 2022, Mr. Galgano attended a portion of a meeting of the board of directors, which Mr. Brawer and Hu also attended. At the meeting, Egan repeated his desire to "improve" the "hit" rate in the Hits and Misses report (*see also* ¶¶ 37-40), and Mr. Galgano objected contemporaneously to Egan's instruction. Mr. Galgano stated in response that the underlying premise of the Hits and Misses report was flawed and that Egan-Jones should not be managing its ratings to the Hits and Misses report because the law required each credit rating agency to follow its respective analytical criteria regardless of any difference in ratings that would result across rating agencies.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Galgano's state of mind or actions based thereon, and accordingly deny such allegations of Paragraph 92. The remaining allegations set forth in Paragraph 92 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 92.

774701533

93.    On or about March 16, 2023, concerned increasingly by Egan's and Hu's exertion of business pressure on rating analysts, Mr. Galgano telephoned the chairman of the board of directors to report several topics of concern including Hu's attempts to direct analytical activities. Concerning the Hits and Misses report, Mr. Galgano explained that, in Mr. Galgano's view, the report was generated and utilized inappropriately.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Galgano's state of mind or actions based thereon, and accordingly deny such allegations of Paragraph 93. The remaining allegations set forth in Paragraph 93 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 93.

94.    In or about May 2023, Egan-Jones's board of directors engaged outside counsel to investigate potential violations of law that were raised by Mr. Galgano and others.  The outside law firm interviewed Mr. Galgano on May 26, 2023 and on September 11, 2023.  During each interview, Mr. Galgano reported his concerns that the conduct of Egan and Hu improperly injected business influence into the analytical process.  *See* 17g-5(c)(8)(ii).

**ANSWER**:  Defendants admit that in or around May 2023, the Independent Directors of EJR engaged outside counsel to conduct an internal investigation of certain allegations. Defendants also admit that Mr. Galgano was interviewed by outside counsel on May 26, 2023 and September 11, 2023.  The remaining allegations set forth in Paragraph 94 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 94.

95.    Mr. Brawer communicated concerns about potential violations to the board of directors at formal quarterly meetings of the board.  As the Designated Compliance Officer, Mr. Brawer delivered a regular compliance presentation at each meeting of the board.  After each board meeting, Mr. Brawer also remained on the line for a private session with independent directors.  In meetings of the board in June 2023 (conducted remotely), September 2023 (conducted in person in New York, NY), and December 2023 (conducted remotely), Mr. Brawer specifically raised his concerns that business pressure to downgrade credit ratings within the banking sector in May 2023 violated the SEC Order and SEC Rule 17g-5 (*see* ¶¶ 58-63).

**ANSWER**:  Defendants admit that the Board of Directors held quarterly meetings and that, as the

Designated Compliance Officer, Brawer delivered a compliance presentation at such meetings and

also met in executive session with the independent Directors. Defendants further admit that Board

of Directors meetings were held on March 16, 2023 remotely, on June 29 2023 remotely, on

September 18, 2023 in person in New York, New York, and on December 20, 2023 remotely. The

remaining allegations set forth in Paragraph 95 contain characterizations, legal argument and

conclusions to which no response is required.  To the extent that a response is required, Defendants

deny the remaining allegations of Paragraph 95.

96.     Mr. Brawer also elevated his concerns to the board outside of these standing
quarterly board meetings.  For example, on August 6, 2023, having concluded that Egan and Hu
likely violated Rule 17g-5(c)(8), the SEC Order, and certain firm policies and procedures when
they pressured ratings analysts to downgrade credit ratings within the banking sector, Mr. Brawer
emailed the independent directors and the general counsel requesting a meeting to discuss
disciplinary action against Egan and Hu.  Although Mr. Brawer was not permitted to attend the
meeting concerning disciplinary action, Mr. Brawer participated in another meeting of the
independent directors on August 7, 2023, in which Mr. Brawer provided to the independent
directors additional documentary evidence concerning downgrades within the banking sector.  Hu
resigned on or about August 9, 2023 before any discipline could be imposed, while Egan received
a warning letter.

**ANSWER**:  Defendants admit that on August 6, 2023, Brawer sent an email to EJR's General

Counsel and the independent members of EJR's Board of Directors to schedule a meeting to

discuss potential disciplinary action, and that the email speaks for itself.   Defendants deny all

allegations in Paragraph 96 to the extent they inaccurately characterize or otherwise are

inconsistent with Brawer's email.  Defendants admit that on August 8, 2023, Hu resigned from

EJR.  Defendants further admit that Egan received a Disciplinary Warning Letter from the Board

of Directors of EJR on August 18, 2023.  The remaining allegations set forth in Paragraph 96

contain characterizations, legal argument and conclusions to which no response is required.  To

the extent that a response is required, Defendants deny the remaining allegations of Paragraph 96.

774701533

97.    On December 5, 2023, pursuant to the reporting requirement of the Roles and Responsibilities Limitations (*see* ¶ 21), Mr. Brawer authored a memorandum to the board of directors, in which Mr. Brawer stated that, based on the violations by Egan and Hu, Mr. Brawer was unable to conclude that controls intended to ensure compliance with the terms of the SEC Order were operating effectively.  Mr. Brawer discussed this memorandum at the meeting of the board of directors on December 20, 2023, two weeks prior to his termination.

**ANSWER**:  Defendants admit that Brawer authored a memo to the Board of Directors dated December 5, 2023, and that the memo speaks for itself.  Paragraph 97 also purports to characterize EJR's "Roles and Responsibilities Limitations: Supplemental Policies and Procedures," which speaks for itself.  Defendants deny all allegations in Paragraph 97 to the extent they inaccurately characterize or otherwise are inconsistent with Brawer's December 5, 2023 memo or the "Roles and Responsibilities Limitations: Supplemental Policies and Procedures."  The remaining allegations set forth in Paragraph 97 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 97.

### III.    Plaintiffs' Reports to the Independent Consultant

98.    On or about July 20, 2023, and August 2, 2023, the Independent Consultant interviewed Mr. Galgano regarding his concerns about potential violations of securities laws and the SEC Order.  During these interviews, Mr. Galgano reported his concerns about potential violation of law including in relation to business pressure to downgrade the banking sector in May 2023.  On or about August 3, 2023, Mr. Galgano transmitted to the Independent Consultant documentary evidence of the same.

**ANSWER**:  Defendants admit that on August 3, 2023, Galgano sent an email to the Independent Consultants, with Brawer on copy, attaching various requested materials, each of which speaks for itself. The remaining allegations set forth in Paragraph 98 contain characterizations, legal argument and conclusions to which no further response is required.  To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 98 and therefore deny them.

99.     On or about May 19, 2023, July 10, 2023, July 19, 2023, August 1, 2023, August 8, 2023, and August 11, 2023, the Independent Consultant met with Mr. Brawer.  In these sessions, Mr. Brawer reported his concerns about potential violations of the securities laws, rules, and the SEC Order.  For example, on May 19, 2023, Mr. Brawer conveyed to the Independent Consultant concerns that Hu was obstructing the implementation of the Independent Consultant's preliminary recommendations required under the SEC Order.  Mr. Brawer encouraged the Independent Consultant to share the information with the SEC staff.  On August 11, 2023, Mr. Brawer reported to the Independent Consultant his concern that Hu sought to exert influence at Egan-Jones despite her purported resignation a few days earlier.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Brawer's state of mind or actions based thereon, and accordingly deny such allegations of Paragraph 99. Further, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning the Independent Consultant's actions and accordingly deny such allegations of Paragraph 98. The remaining allegations set forth in Paragraph 99 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 99.

100.     On August 25, 2023, the Independent Consultant submitted a final report to Egan-Jones and to the SEC.  Among his findings, the Independent Consultant concluded that there is a credible basis to believe that both Egan and Hu may have violated Rule 17g-5(c)(8) and that Egan may also have violated the SEC Order since it was issued.

**ANSWER**:  Defendants admit that on August 25, 2023 the Independent Consultant submitted a final report, which speaks for itself, to EJR and to the SEC.  Defendants deny all allegations in Paragraph 100 to the extent they inaccurately characterize or otherwise are inconsistent with the final report.  The remaining allegations set forth in Paragraph 100 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 100.

### IV.     Plaintiffs' Reports to the SEC's OCR Staff

774701533

101.    As part of their respective duties, Mr. Galgano and Mr. Brawer each met with SEC staff during OCR's annual examination of Egan-Jones and independently reported potential violations of law by Egan and Hu.

**ANSWER**:  Upon information and belief, Defendants admit that Galgano and Brawer each met with SEC staff during the OCR's annual examination of EJR.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and accordingly deny such allegations of Paragraph 101. The remaining allegations set forth in Paragraph 101 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 101.

102.    In late 2022 or early 2023, Mr. Galgano had a conversation with an employee of OCR in which Mr. Galgano shared his concerns with business pressure that Egan and Hu exerted on ratings analysts.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 102 and therefore deny them.

103.    On May 17, 2023, during the annual examination, OCR staff conducted a meeting with Egan-Jones employees, including Mr. Galgano, at the New York City office of Egan-Jones. At the meeting's conclusion, the OCR staff asked Mr. Galgano to remain behind for some additional questions.  In the presence of Mr. Brawer and the general counsel, the SEC examination staff interviewed Mr. Galgano regarding several topics including: (i) Egan-Jones's points system for compensation of analytical staff; (ii) Egan-Jones's bonus compensation structure for analytical staff; and (iii) business pressure to alter indicative ratings to induce the customer to engage Egan-Jones to issue the final rating.  In responding to the SEC staff, Mr. Galgano expressed concern with how Egan-Jones managed each of these matters and, in particular, how commercial interests by Egan-Jones management may influence the analytical staff and ratings outcomes.  For example, as it relates to the points system, Mr. Galgano expressed a concern that the system creates pressure for analysts to produce a certain volume of ratings and risk sacrificing ratings quality in favor of assigning more ratings.  As described in ¶¶ 129-131, upon learning of Mr. Galgano's statements to the SEC, Egan and Hu immediately expressed a desire to terminate Mr. Galgano's employment.

**ANSWER**:  Defendants admit that on May 17, 2023, SEC staff met with EJR employees, including Brawer, Galgano and EJR's General Counsel, in EJR's New York office as part of the OCR's annual examination of EJR.  The remaining allegations set forth in Paragraph 103 contain

characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 103.

104.    On June 14, 2023, Mr. Brawer advised OCR staff about the allegations made by the IT executive the prior day that Hu instructed the IT executive to lie to the SEC concerning Hu's role (*see* ¶¶ 64-66).  Mr. Brawer advised that he was "deeply disturbed by these allegations" which would be investigated by outside counsel.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Brawer's state of mind or actions based thereon, and accordingly deny such allegations of Paragraph 104. The remaining allegations set forth in Paragraph 104 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 104.

105.    On June 16, 2023, Mr. Brawer disclosed additional details to OCR regarding the investigation of Hu's misrepresentation.  Mr. Brawer also advised OCR that Egan-Jones placed Hu on administrative leave pending the outcome of the investigation.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning the allegations of Paragraph 105 and therefore deny them.

106.    On August 13, 2023, Mr. Brawer advised OCR about an expansion of the internal investigation into the application of business pressure by Egan and Hu for analytical staff to downgrade credit ratings within the banking sector in May 2023.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Brawer's actions and accordingly deny such allegations of Paragraph 106. The remaining allegations set forth in Paragraph 106 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 106.

107.    On September 29, 2023, OCR issued the annual examination report to Egan-Jones for the calendar year 2022 which determined that Hu's points system and Hu's violation of the Marketing Procedures each violated SEC regulations and constituted "material regulatory deficiencies" warranting inclusion in the SEC's annual inspection report to Congress.  The

examination report cited concerns raised by Plaintiffs with the SEC regarding these activities at Egan-Jones.

**ANSWER**:  Paragraph 107 purports to characterize the 2023 SEC Examination Findings and Recommendations, which speak for themselves.  Defendants deny all allegations in Paragraph 107 to the extent they inaccurately characterize or otherwise are inconsistent with the 2023 SEC Examination Findings and Recommendations.  The remaining allegations set forth in Paragraph 107 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 107.

108.    On October 24, 2023, pursuant to Paragraph 72 of the SEC Order, Mr. Brawer submitted a limited certification to the SEC staff, in which Mr. Brawer certified compliance with the undertakings of the SEC Order subject to certain exceptions.  As relevant here, insofar as the final report of the Independent Consultant of August 25, 2023 indicated that the Independent Consultant was unable to assess relevant policies and could not assess whether Egan violated the prohibition on participating in analytical activities, Mr. Brawer expressly did not certify compliance with Paragraph 69 of the SEC Order requiring Egan-Jones to "prohibit Egan from participating directly or indirectly in (a) determining or monitoring any credit rating issued or maintained by Egan-Jones or (b) developing or approving procedures or methodologies used for determining credit ratings issued or maintained by Egan-Jones, including qualitative and quantitative models."

**ANSWER**:  Defendants admit that on October 24, 2023, EJR, through its counsel, submitted the certifications of the CEO and Designated Compliance Officer with accompanying materials as required by the SEC's June 21, 2022 Order.  Paragraph 108 purports to characterize those certifications, each of which speaks for itself.  Defendants deny all allegations in Paragraph 108 to the extent they inaccurately characterize or otherwise are inconsistent with those certifications. The remaining allegations set forth in Paragraph 108 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 108.

V.    **Plaintiffs' Reports to the SEC Whistleblower Office**

109.    In 2023, Mr. Galgano and Mr. Brawer independently filed whistleblower complaints regarding potential violations of law at Egan-Jones with the SEC's Officer of the Whistleblower.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 109 and therefore deny them, except to state that Plaintiffs have produced documents during discovery that suggest that Galgano filed a complaint with the SEC's Officer of the Whistleblower on June 9, 2023, and provided supplemental information on September 13, 2023, and that Brawer filed a complaint with the SEC's Officer of the Whistleblower on August 20, 2023, and provided supplemental information on September 27, 2023, October 6, 2023 and December 17, 2023.  Defendants deny any remaining allegations of Paragraph 109.

i.    Mr. Galgano's Whistleblower Submissions

110.    On May 25, 2023, Mr. Galgano filed his initial whistleblower complaint through the SEC's website on Form TCR, including his concern that Egan and Hu had tried to influence the rating process by demanding rating downgrades in the banking sector (*see* ¶¶ 50-63), in violation of Rule 17g-5 and the SEC Order settling alleged earlier violations of the same rules.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 110 about Galgano's actions on May 25, 2023, and therefore deny them.  Further, the allegations set forth in Paragraph 110 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 110.

111.    On June 9, 2023, Mr. Galgano filed a supplemental memorandum expanding on his prior submission and identifying other categories of misconduct including (a) the application of business pressure by Egan and Hu to change Egan-Jones's ratings to align with those of other rating agencies, (b) the application of business pressure by Egan and Hu for analytical staff to downgrade ratings within the banking sector, and (c) potential retaliation for Mr. Galgano's honest answers to OCR examiners on May 17, 2023 (*see* ¶¶ 129-131).  In Mr. Galgano's reasonable belief, this conduct constituted "violations of Rule 17g-5(c), the OIP, and Egan-Jones's policies and procedures."

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 111 and therefore deny them, except to state that Plaintiffs have produced documents during discovery that suggest that Galgano filed a complaint with the SEC's Officer of the Whistleblower on June 9, 2023. Further, the allegations set forth in Paragraph 111 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 111.

112.    In subsequent interviews and written communications with the SEC Enforcement staff, Mr. Galgano continued to provide evidence regarding potential violations of securities laws at Egan-Jones.  For example, in his interview of June 15, 2023, Mr. Galgano provided information and expressed his concerns with Egan-Jones's practices involving (1) the points system, (2) Hits and Misses report, (3) business pressure to change ratings in the banking sector, and (4) possible retaliation for raising his concerns with the SEC examination team.  On July 17, 2023, Mr. Galgano provided information and expressed his concerns with Egan-Jones's practices involving (1) the points system, and (2) certain private ratings.  On December 4, 2023, Mr. Galgano made a supplemental written submission in which he expressed his concern regarding Hu's ongoing role at Egan-Jones despite her purported resignation.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 112 about Galgano's actions, and therefore deny them. Further, the allegations set forth in Paragraph 112 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 112.

ii.    Mr. Brawer's Whistleblower Submissions

113.    On August 20, 2023, Mr. Brawer filed the first of his four SEC whistleblower complaints through the SEC website on Form TCR and reported his concerns that (1) Hu and Egan were intentionally circumventing Egan-Jones's internal control structure to influence ratings activities, and (2) Egan-Jones had misinformed the SEC staff regarding Hu's resignation in a manner that may obstruct SEC's investigation of Egan-Jones.  Mr. Brawer supplemented this report in correspondence with the SEC Enforcement staff in October and November of 2023. Mr. Brawer actually and reasonably believed that Hu's concealed role circumvented Egan-Jones's internal control structure designed to ensure compliance with federal securities laws and regulations and constituted fraud on the federal regulator.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 113 and therefore deny them, except to state that Plaintiffs have produced documents during discovery that suggest that Brawer filed a complaint with the SEC's Officer of the Whistleblower on August 20, 2023, and provided supplemental information on September 27, 2023, October 6, 2023 and December 17, 2023. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 113 about Brawer's actions, and therefore deny them.  Further, the allegations set forth in Paragraph 113 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 113.

114.    On September 27, 2023, Mr. Brawer submitted a second SEC whistleblower complaint through the SEC website on Form TCR and reported his belief that Egan likely violated the terms of the SEC Order when Egan pressured analysts to downgrade bank ratings on May 5, 2023.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 114 and therefore deny them, except to state that Plaintiffs have produced documents during discovery that suggest that Brawer provided supplemental information to the SEC's Officer of the Whistleblower on September 27, 2023. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 114 about Brawer's actions, and therefore deny them.  Further, the allegations set forth in Paragraph 114 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 114.

115.    On October 2, 2023, Mr. Brawer informed the SEC staff in writing regarding his discovery that there have been monthly "award" payments (roughly $100 - $300) made to analysts

based on the points system. Mr. Brawer actually and reasonably believed and communicated to the staff that Hu's failure to inform the board of directors about the points system and "award" payments violated the provision of the Dodd-Frank Act that requires a NRSRO's board of directors to oversee "the compensation and promotion policies and practices" of the NRSRO. *See* 15 U.S.C. 78o-7(t)(3)(D).

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 115 about Brawer's actions, and therefore deny them. Further, the allegations set forth in Paragraph 115 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 115.

116.    On October 6, 2023, Mr. Brawer submitted a third SEC whistleblower complaint through the SEC website on Form TCR and reported his concern that he was unable to implement the board resolution seeking to put in place a chaperone requirements process as a step toward complying with the SEC Order. Mr. Brawer expressed his concern that Egan was impeding the intended outcome of an investigation by attempting to override the actions of the independent directors and undermine effective board governance at Egan-Jones.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 116 and therefore deny them, except to state that Plaintiffs have produced documents during discovery that suggest that Brawer provided supplemental information to the SEC's Officer of the Whistleblower on October 6, 2023. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 116 about Brawer's actions, and therefore deny them. Further, the allegations set forth in Paragraph 116 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 116.

117.    On October 23, 2023, November 26, 2023, November 28, 2023, and December 13, 2023, Mr. Brawer submitted information that supplemented the first SEC whistleblower complaint and expressed concern that Egan-Jones's misrepresentation of Hu's ongoing but hidden role at Egan-Jones "may constitute an intentional fraud against the SEC."

774701533

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 117 about Brawer's actions, and therefore deny them. Further, the allegations set forth in Paragraph 117 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 117.

118.    On December 17, 2023, Mr. Brawer submitted his fourth SEC whistleblower complaint through the SEC website on Form TCR and reported his concern concerning possible retaliation by Egan-Jones against employees who have made good faith allegations of wrongdoing.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 118 and therefore deny them, except to state that Plaintiffs have produced documents during discovery that suggest that Brawer provided supplemental information to the SEC's Officer of the Whistleblower on December 17, 2023. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 118 about Brawer's actions, and therefore deny them.  Further, the allegations set forth in Paragraph 118 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 118.

119.    On December 20, 2023, Mr. Brawer provided supplemental information to the staff concerning his report to the board of directors earlier that day that Mr. Brawer was unable to conclude that controls intended to ensure compliance with the terms of the SEC Order are operating effectively based on the findings of the internal investigation.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 119 about Brawer's actions, and therefore deny them. Further, the allegations set forth in Paragraph 119 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 119.

47

120.    In interviews with the SEC Enforcement staff on September 15, 2023, September 22, 2023, October 24, 2023, and November 11, 2023, as well as supplemental electronic submissions, Mr. Brawer continued to provide evidence regarding the potential violations of securities laws at Egan-Jones described in his written complaints.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 120 about Brawer's actions, and therefore deny them. Further, the allegations set forth in Paragraph 120 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 120.

### D.    DEFENDANTS RETALIATED AGAINST PLAINTIFFS BECAUSE OF PLAINTIFFS' PROTECTED ACTIVITY

121.    After Hu and Egan learned that Mr. Brawer and Mr. Galgano reported potential violations of securities laws and regulations internally and externally, in the manner described above, Hu and Egan (i) harassed Plaintiffs, (ii) repeatedly threatened Plaintiffs with termination, demotion, and reassignment, and (iii) ultimately terminated Plaintiffs' employment on January 3, 2024 because of Plaintiffs' protected activity.

**ANSWER**: The allegations set forth in Paragraph 121 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 121.

### I.    Threats to Mr. Brawer's Career After Mr. Brawer Reported to Executive Management that Hu had Willfully Violated Egan-Jones's Marketing Procedures

122.    On September 21, 2022, after Mr. Brawer initiated an investigation into the allegation that Hu violated the Marketing Procedures during a phone call with a client (*see* ¶¶ 4149), Hu stated to Mr. Brawer in sum and substance that: "With the e-mail you sent about [the analyst], it will affect your career with the company."

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Brawer's state of mind or actions based thereon, and accordingly deny the allegations of Paragraph 122.  The remaining allegations set forth in Paragraph 122 contain characterizations, legal argument and conclusions to which no response is

required.  To the extent that a response is required, Defendants deny the remaining allegations of

Paragraph 122.

123.    Later in the day on September 21, 2022, Mr. Brawer informed Egan (with Hu present on the call) that Hu had willfully violated, and had instructed the representative of Egan-Jones's commercial staff to violate, the Marketing Procedures and that Hu had later threatened Mr. Brawer's career for having raised the violation.  Hu concluded the meeting by raising the prospect of hiring additional compliance staff who might ultimately replace Mr. Brawer, which Mr. Brawer understood to be a threat of demotion, reassignment, or termination.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations concerning Mr. Brawer's state of mind or actions based thereon, and

accordingly  deny  the  allegations  of  Paragraph  123.  The  remaining  allegations  set  forth  in

Paragraph 123 contain characterizations, legal argument and conclusions to which no response is

required.  To the extent that a response is required, Defendants deny the remaining allegations of

Paragraph 123.

124.    On October 10, 2022, Mr. Brawer called Hu to discuss Egan-Jones's obligation to take disciplinary action following the earlier conclusion that she had violated the Marketing Procedures.  Hu insisted that Mr. Brawer and the general counsel had misinterpreted Egan-Jones's procedures and that Hu had not violated them.  Hu repeated her intention to hire another employee for regulatory interpretations and compliance investigations, which Mr. Brawer understood to be a threat to his career.  Hu also stated that she intended to obtain a second opinion from an outside lawyer for Egan-Jones.  Hu insisted that the general counsel's investigation memo concluding that Hu violated Egan-Jones's policies was faulty and that it would be a good idea to have another lawyer perform a new, fresh investigation.

**ANSWER**:  Defendants admit that the EJR's General Counsel issued a memo on September 29,

2022, and that the memo speaks for itself.  Defendants deny all allegations in Paragraph 124 to the

extent they inaccurately characterize or are otherwise inconsistent with that memo.  Defendants

lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

concerning Brawer's state of mind or actions based thereon, and accordingly deny the allegations

of Paragraph 124.  The remaining allegations set forth in Paragraph 124 contain characterizations,

legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 124.

125.    On March 24, 2023, during a meeting on the state of internal controls in 2022 (attended by, among others, Mr. Brawer, Egan, Hu, and the general counsel), Hu informed Mr. Brawer that she was "extremely disappointed" in Mr. Brawer for continuing to list Hu's violation of the Marketing Procedures on the 2022 Exception Log.

**ANSWER**: Defendants admit that a meeting was held on March 24, 2023. Defendants deny the remaining allegations of Paragraph 125.

### II.    Attempted Demotion of Mr. Galgano after Mr. Galgano Expressed Concerns to Senior Management Regarding Pressure to Downgrade Ratings in the Banking Sector

126.    On Saturday, March 11, 2023, after Mr. Galgano objected to Egan's and Hu's pressure to downgrade SVB Financial Group by morning of Monday, March 13, 2023 (*see* ¶¶ 53, 85), Egan and Hu telephoned Mr. Brawer and directed Mr. Brawer to circumvent Mr. Galgano and instead to communicate going forward directly with analytical staff supervised by Mr. Galgano. Mr. Brawer responded that he would refuse to withhold any matters having a material impact on the work of the analytical team from Mr. Galgano, as head of the analytical team.

**ANSWER**: Defendants admit that on March 11, 2023, the Chairman of EJR's Board of Directors sent an email to Brawer, making a formal request for a review of all ratings with similar risk profile to SVB. The remaining allegations set forth in Paragraph 126 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 126.

127.    On Sunday, March 12, 2023, Hu telephoned Mr. Brawer and directed him to contact analytical staff and to instruct them that they should cease updating bank credit ratings based solely on their own judgment and should review information conveyed by the general counsel of Egan-Jones regarding any further ratings actions. Mr. Brawer stated that he would not provide these instructions to analytical staff due to the requirement that Egan-Jones maintain the integrity of its ratings process. Hu abruptly ended the call.

**ANSWER**: Defendants deny the allegations of Paragraph 127.

128.    Also on Sunday, March 12, 2023, Mr. Galgano learned from certain Egan-Jones analysts that Hu had called them and instructed them regarding how and with whom to hold bank rating committees, and that Hu instructed the analysts not to discuss these analytical matters with

Mr. Galgano.  Mr. Galgano understood this to be an attempt at demotion and reassignment in retaliation for Mr. Galgano's resistance to business pressure to downgrade bank ratings.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 128 and therefore deny them.  Further, the allegations set forth in Paragraph 128 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 128.

### III.  Attempted Termination of Mr. Galgano Following Mr. Galgano's Report to OCR Concerning the Influence of Commercial Interests on Analytical Staff and Ratings

129.    On May 17, 2023, immediately after Mr. Galgano's conversation with OCR examiners in Egan-Jones's office in New York in which Mr. Galgano expressed concern with how commercial interests by Egan-Jones management may influence the analytical staff and ratings outcomes (*see* ¶ 103), Hu asked Mr. Brawer and the general counsel what Egan-Jones could do to terminate Mr. Galgano's employment at Egan-Jones.  Mr. Brawer and the general counsel informed Hu that Mr. Galgano was protected by anti-retaliation policies.

**ANSWER**:  Defendants admit that on May 17, 2023, SEC staff met with EJR employees, including Galgano, in EJR's New York office as part of the OCR's annual examination of EJR. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 129 about Galgano's discussions with OCR staff, and therefore deny them.  Further, the allegations set forth in Paragraph 129 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 129.

130.    On May 22, 2023, the general counsel informed Mr. Brawer and a newly appointed head of Human Resources (who took over Hu's responsibilities for human resources) that Hu had pressured the general counsel earlier in the day to explore options to either replace or demote Mr. Galgano.  The general counsel stated that he had made clear to Hu that retaliation against Mr. Galgano was prohibited.

**ANSWER**:  Defendants deny the allegations of Paragraph 130.  Further, the allegations set forth

in Paragraph 130 contain characterizations, legal argument and conclusions to which no response

is required.

131.    Later the same day, May 22, 2023, the chairman of the board and the general counsel each communicated to Mr. Brawer in separate conversations that Hu had raised with each of them the proposal that a performance review of Mr. Galgano be conducted and that he be terminated or demoted after the review.  The general counsel informed Mr. Brawer that Hu had indicated that she planned to attribute the termination to the chairman of the board of directors. The chairman of the board told Mr. Brawer a termination of Mr. Galgano would likely constitute prohibited retaliation.

**ANSWER**:  Defendants deny the allegations of Paragraph 131.  Further, the allegations set forth

in Paragraph 131 contain characterizations, legal argument and conclusions to which no response

is required.

### IV.    Defendants' Retaliatory Termination of Plaintiffs' Employment Following Plaintiffs' Submission of Whistleblower Complaints to the SEC

132.    After threatening Mr. Brawer with termination in 2022 and attempting to demote and terminate Mr. Galgano in 2023, Defendants carried through with their threats and terminated Plaintiffs on January 3, 2024 in retaliation for Plaintiffs' good faith reports of their concerns regarding violation of federal statutes, rules, and the SEC Order at Egan-Jones to internal and external stakeholders.

**ANSWER**:  Defendants admit that Plaintiffs were terminated on January 3, 2024. The remaining

allegations set forth in Paragraph 132 contain characterizations, legal argument and conclusions to

which no response is required.  To the extent that a response is required, Defendants deny the

remaining allegations of Paragraph 132.

133.    In addition to Defendants' direct knowledge of Plaintiffs' internal complaints and Mr. Galgano's report to OCR on May 17, 2023, upon information and belief, Defendants knew that Plaintiffs filed whistleblower complaints to the SEC when they terminated Plaintiffs' employment.

**ANSWER**:  The allegations set forth in Paragraph 133 contain characterizations, legal argument

and conclusions to which no response is required.  To the extent that a response is required,

Defendants deny the allegations of Paragraph 133.

774701533

134.    Among other indications of such knowledge, on or about June 16, 2023, Mr. Galgano was contacted by an executive recruiter with experience in the credit rating industry, who told Mr. Galgano that the recruiter had learned that there is a whistleblower at Egan-Jones. Upon information and belief, the executive recruiter and Egan are familiar with each other and were in communication during this time period.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 134 and therefore deny them.  The remaining allegations set forth in Paragraph 134 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 134.

135.    In addition, in response to an unrelated SEC inquiry, Egan-Jones took steps to collect work-related text messages from Mr. Galgano's personal devices, and Mr. Galgano insisted on taking steps to reduce the risk that his non-work communications would be disclosed to Egan-Jones because they might overtly reveal him to be a whistleblower.  Through counsel, Mr. Galgano provided work-related text messages to Egan-Jones on August 30, 2023, which included communications by Mr. Galgano highly critical of Egan and Hu.  The disclosure of those communications to Egan-Jones, as well as the additional efforts by Mr. Galgano to protect his personal communications from disclosure, also alerted Egan-Jones to the existence of a whistleblower.

**ANSWER**:  Defendants admit that, in response to an unrelated SEC inquiry on off-channel communications, EJR took steps to collect work-related text messages from certain EJR personnel, including Galgano, based on the SEC's requests for particular custodians.  Defendants admit that on or around August 30, 2023, Galgano, through his counsel, provided work-related text messages to EJR, and that each such text message speaks for itself.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Galgano's state of mind or actions based thereon, and accordingly deny the allegations of Paragraph 135.  The remaining allegations set forth in Paragraph 135 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 135.

136.    Further, after the chairman of Egan-Jones's board of directors resigned in August 2023, Mr. Brawer explicitly informed the former director that Mr. Brawer had filed an SEC whistleblower complaint earlier in the year, believing that the director was no longer affiliated with Egan-Jones.  On December 20, 2023, at a meeting of the board of directors, Egan stated that the former chairman remained an advisor for Egan-Jones.

**ANSWER**:  Defendants admit that the then-Chairman of EJR's Board of Directors resigned in

August 2023.  Defendants lack knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations concerning Brawer's state of mind or actions based thereon, and

accordingly deny the allegations of Paragraph 136.  Defendants deny the remaining allegations of

Paragraph 136.

137.    Two weeks later, on January 3, 2024, Mr. Galgano and Mr. Brawer each received an invitation for a video conference with the head of Human Resources and the general counsel of Egan-Jones.  Each Plaintiff was terminated effective the same day.

**ANSWER**:  Defendants admit the allegations of Paragraph 137.

138.    Upon information and belief, no other employee of Egan-Jones was terminated on January 3, 2024.

**ANSWER**:  Defendants admit the allegations of Paragraph 138.

139.    Neither Plaintiff received any adverse performance review prior to their abrupt terminations.

**ANSWER**:  The allegations set forth in Paragraph 139 contain characterizations, legal argument

and conclusions to which no response is required.  To the extent that a response is required,

Defendants deny the allegations of Paragraph 139.

140.    In the year prior to termination, Egan-Jones offered each Plaintiff a retention agreement to encourage their remaining at Egan-Jones.

**ANSWER**:  The allegations set forth in Paragraph 140 contain characterizations, legal argument

and conclusions to which no response is required.  To the extent that a response is required,

Defendants deny the allegations of Paragraph 140.

## FIRST CLAIM FOR RELIEF
### Retaliation In Violation of the Dodd-Frank Act
### 15 U.S.C. § 78u-6(h)

141.    Plaintiffs reallege and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER**:  Defendants incorporate their responses to Paragraphs 1-140 as if set forth fully herein.

142.    At all times material hereto, the whistleblower protection provision of the Dodd-Frank Act, 15 U.S.C. § 78u-6(h), was in effect and binding on Defendants.  It permits individuals who allege discharge or other discrimination to bring an action in United States District Court for relief.

**ANSWER**:  Paragraph 142 purports to characterize 15 U.S.C. § 78u-6(h) which speaks for itself.

Defendants deny all allegations in Paragraph 142 to the extent they inaccurately characterize or

otherwise are inconsistent with 15 U.S.C. § 78u-6(h).

143.    At all relevant time periods, Plaintiffs were "employees" of Defendant Egan-Jones.

**ANSWER**:  The allegations set forth in Paragraph 143 contain characterizations, legal argument

and conclusions to which no response is required.  To the extent that a response is required,

Defendants admit that Plaintiffs were employees of EJR for purposes of the Dodd-Frank Act.

144.    At all relevant time periods, Defendants were Plaintiffs' "employers."

**ANSWER**:  The allegations set forth in Paragraph 144 contain characterizations, legal argument

and conclusions to which no response is required.  To the extent that a response is required,

Defendants admit that EJR was Plaintiffs' employer for purposes of the Dodd-Frank Act.

Defendants deny the remaining allegations of Paragraph 144.

145.    Plaintiffs engaged in a "lawful act" within the meaning of Section 78u-6(h) -namely the reporting of conduct that Plaintiffs actually and reasonably believed to be specific violations of securities laws and regulations by, among others, Egan-Jones, Egan, and Hu (i) internally to persons with supervisory authority over Plaintiffs and such other persons working for Egan-Jones who has the authority to investigate, discover, or terminate misconduct, and (ii) externally to the SEC (OCR, Office of the Whistleblower, and Division of Enforcement).

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and accordingly deny them. The remaining allegations set forth in Paragraph 145 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 145.

146. Plaintiffs' belief that Egan-Jones, Egan, and Hu were violating specific violations of securities laws and regulations, including Section 15E of the Exchange Act, Rule 17g-5, and the SEC Order was objectively reasonable because, among other things:

   a. Egan-Jones was already under the SEC Order arising from prior violation of several provisions of Rule 17g-5 and Section 15E(h)(1) of the Exchange Act from 2016 through mid-2019.

   b. The Independent Consultant concluded that there is a credible basis to believe that both Egan and Hu may have violated Rule 17g-5(c)(8) and that Egan may also have violated the SEC Order since it was issued.

   c. OCR's examination report issued to Egan-Jones for the calendar 2022 contained findings (regarding the points system and violation of the Marketing Procedures) that, in the view of the SEC staff, rose to the level of "material regulatory deficiencies" meriting inclusion in the annual inspection report to Congress.

   d. Mr. Galgano's and Mr. Brawer's whistleblower complaints were deemed by SEC staff to have sufficient merit to warrant follow-up interviews with each of them.

   e. Several other analysts shared Mr. Galgano's and Mr. Brawer's concern regarding Hu's and Egan's improper business pressure on analysts.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and accordingly deny them. The remaining allegations set forth in Paragraph 146 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations of Paragraph 146.

147. By making internal reports of relating to the violation of securities laws and regulations to executive management, the general counsel, and the board of directors, Plaintiffs made disclosures that are independently protected under the Sarbanes-Oxley Act of 2002. *See* 18 U.S.C. § 1514A.

**ANSWER**: The allegations set forth in Paragraph 147 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 147.

148.    By the filing of a Form TCR through the SEC's website, Plaintiffs each made a written report relating to the violation of securities laws and regulations, rendering each Plaintiff a "whistleblower" within the meaning of the Dodd-Frank Act. Following their initial submission of Form TCR, each Plaintiff cooperated with SEC's Division of Enforcement in the investigation of Egan-Jones.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning the allegations set forth in Paragraph 148, and accordingly deny them. The allegations of Paragraph 148 also contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 148.

149.    Defendants knew that Plaintiffs engaged in protected activity, namely (i) internal reports of wrongdoing to executive management, the general counsel, and the board of directors; and (ii) external reports of wrongdoing to the SEC (OCR, Office of the Whistleblower, and Division of Enforcement).

**ANSWER**: The allegations set forth in Paragraph 149 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 149.

150.    Defendants harassed, threatened, discharged and retaliated against Plaintiffs after Defendants learned that Plaintiffs made oral and written complaints regarding what they actually and reasonably believed to be illegal or unlawful conduct in violation of federal statutes, rules and regulation.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and accordingly deny them. The allegations set forth in Paragraph 150 also contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 150.

151.    Following their submission of Form TCRs and cooperation with the Division of Enforcement, each Plaintiff suffered an adverse employment action on January 3, 2024, when each was terminated.

**ANSWER**:  Defendants admit that Plaintiffs were terminated on January 3, 2024.  Defendants

lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

concerning the allegations about unspecified Form TCRs or cooperation with the Division of

Enforcement, and accordingly deny them.  The allegations set forth in Paragraph 151 also contain

characterizations, legal argument and conclusions to which no response is required.  To the extent

that a response is required, Defendants deny the allegations of Paragraph 151.

152.    Defendants threatened, harassed, and ultimately terminated Plaintiffs' employment because of and in retaliation for Plaintiffs' protected lawful acts.

**ANSWER**:  The allegations set forth in Paragraph 152 contain characterizations, legal argument

and conclusions to which no response is required.  To the extent that a response is required,

Defendants deny the allegations of Paragraph 152.

153.    Plaintiffs suffered harm by reason of Defendants' unlawful conduct and have suffered losses and damages, including a loss of earnings and other employment benefits, in an amount to be proven.

**ANSWER**:  The allegations set forth in Paragraph 153 contain characterizations, legal argument

and conclusions to which no response is required.  To the extent that a response is required,

Defendants deny the allegations of Paragraph 153.

154.    Plaintiffs seek all relief allowable by law.

**ANSWER**:  Defendants admit that Plaintiffs purport to see relief allowable by law, but deny that

Plaintiffs are entitled to any relief.

## SECOND CLAIM FOR RELIEF
### Retaliation in Violation of New York Labor Law § 740

155.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

774701533

**ANSWER**:  Defendants incorporate their responses to Paragraphs 1-154 as if set forth fully herein.

156.    At all relevant time periods, Egan-Jones maintained an office in New York, NY and was subject to New York Labor Law.

**ANSWER**:  Defendants admit that EJR maintains an office in New York, NY.  Further, the allegations set forth in Paragraph 156 contain characterizations, legal argument and conclusions to which no response is required.

157.    At all relevant time periods, Plaintiffs were "employees" of Defendant Egan-Jones.

**ANSWER**:  The allegations set forth in Paragraph 157 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs were employees of EJR for purposes of the New York Labor Law.

158.    At all relevant time periods, Defendants were Plaintiffs' "employers."

**ANSWER**: The allegations set forth in Paragraph 158 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants admit that EJR was Plaintiffs' employer for purposes of the New York Labor Law.

159.    Egan, Hu, and members of the board of directors were each a "supervisor" within the meaning of New York Labor Law § 740(1)(f).

**ANSWER**:  The allegations set forth in Paragraph 159 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 159.

160.    The actions of Defendants were in direct violation of the New York Labor Law § 740.

**ANSWER**:  The allegations set forth in Paragraph 160 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 160.

161.    Plaintiffs reasonably believed that the conduct described above was a violation of a law, rule, or regulation.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and accordingly deny them.  Defendants deny the remaining allegations of Paragraph 161.

162.    Plaintiffs contemporaneously objected to and refused to participate in conduct that Plaintiffs reasonably believed was a violation of a law, rule, or regulation.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and accordingly deny them.  The allegations set forth in Paragraph 162 also contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 162.

163.    Plaintiffs provided information to, and testified before, a public body (to wit, the SEC) conducting an investigation into such conduct by Egan-Jones.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 163 and therefore deny them.  Defendants deny the remaining allegations of Paragraph 163.

164.    Plaintiffs disclosed to their supervisors and to a public body (to wit, the SEC), conduct that Plaintiffs reasonably believed was a violation of a law, rule, or regulation.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and accordingly deny them.  Defendants deny the remaining allegations of Paragraph 164.

165.    Defendants engaged in prohibited retaliatory action against Plaintiffs because they engaged in protected conduct.

**ANSWER**:  The allegations set forth in Paragraph 165 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 165.

774701533

166.    Plaintiffs suffered harm by reason of Defendants' unlawful conduct and have suffered losses and damages, including a loss of earnings and other employment benefits, in an amount to be proven.

**ANSWER**:  The allegations set forth in Paragraph 166 contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 166.

167.    Plaintiffs seek all relief allowable by law.

**ANSWER**:  Defendants admit that Plaintiffs purport to see relief allowable by law, but deny that Plaintiffs are entitled to any relief.

### THIRD CLAIM FOR RELIEF
### Retaliation In Violation of the Sarbanes-Oxley Act  18 U.S.C. § 1514(A)

168.    Plaintiffs reallege and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER:**  Defendants incorporate their responses to Paragraphs 1-167 as if set forth fully herein.

169.    At all times material hereto, the whistleblower protection provision of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, was in effect and binding on Defendants.

**ANSWER:**  Paragraph 169 purports to characterize 18 U.S.C. § 1514A which speaks for itself. Defendants deny all allegations in Paragraph 169 to the extent they inaccurately characterize or otherwise are inconsistent with 18 U.S.C. § 1514A.

170.    At all relevant time periods, Plaintiffs were "employees" of Defendant Egan-Jones.

**ANSWER:**  The allegations set forth in Paragraph 170 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants admit that Plaintiffs were employees of EJR for purposes of the Sarbanes-Oxley Act.

171.    At all relevant time periods, Defendants Egan and Hu were officers, employees, contractors, subcontractors, or agents of Defendant Egan-Jones.

**ANSWER:**  The allegations set forth in Paragraph 171 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required,

Defendants admit that Egan is an employee and officer of EJR, and that Hu formerly worked as an employee of EJR, and was an officer of EJR while employed by EJR. Defendants deny the remaining allegations of Paragraph 171.

172.    Plaintiffs engaged in a "lawful act" described above within the meaning of Section 1514(A).

**ANSWER:** The allegations set forth in Paragraph 172 contain characterizations, legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 172.

173.    Plaintiffs reasonably believed that the conduct described above by Defendants violated federal securities laws and regulations governing NRSROs.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and accordingly deny them. Defendants deny the remaining allegations of Paragraph 173.

174.    Plaintiffs contemporaneously objected to and refused to participate in conduct that Plaintiffs reasonably believed was a violation of a law, rule or regulation.

**ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiffs' states of mind or actions based thereon, and accordingly deny them.  The allegations set forth in Paragraph 174 also contain characterizations, legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 174.

175.    Plaintiffs provided information to, and testified before, a Federal regulatory or law enforcement agency (to wit, the SEC) conducting an investigation into such conduct by Egan-Jones.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 175 and therefore deny them.  Defendants deny the remaining allegations of Paragraph 175.

774701533

176.     Plaintiffs made internal reports relating to the violation of securities laws and regulations to individuals with supervisory authority over them and/or to individuals working for Defendant Egan-Jones who have the authority to investigate, discover, or terminate misconduct, namely, executive management, the general counsel, and the board of directors.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 176 and therefore deny them. Defendants deny the remaining allegations of Paragraph 176.

177.     Defendants knew that Plaintiffs engaged in protected activity, described above.

**ANSWER:** The allegations set forth in Paragraph 177 contain characterizations, legal argument and conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 177.

178.     Defendants discharged, threaten [sic], harassed, and discriminated against Plaintiffs because of and in retaliation for Plaintiffs' protected lawful acts.

**ANSWER:** The allegations set forth in Paragraph 178 contain characterizations, legal argument and conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 178.

179.     Plaintiffs suffered harm by reason of Defendants' unlawful conduct and have suffered losses and damages, including pain, mental anguish, emotional distress, a loss of earnings and other employment benefits, in an amount to be proven.

**ANSWER:** The allegations set forth in Paragraph 179 contain characterizations, legal argument and conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 179.

180.     Plaintiffs seek all relief allowable by law.

**ANSWER:**     Defendants admit that Plaintiffs purport to seek relief allowable by law, but deny that Plaintiffs are entitled to any relief.

774701533

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:
- a)  Statutory damages;
- b)  Compensatory damages;
- c)  Special damages;
- d)  Reinstatement of employment or front pay on lieu thereof;
- e)  Double back compensation and employee benefits, with interest;
- f)  A civil penalty;
- g)  Punitive damages;
- h)  Reasonable attorneys' fees and expenses;
- i)  All relief necessary to make the Plaintiffs whole; and
- j)  That the Court enter a judgment awarding such other relief as the Court deems just and proper.

**ANSWER:** Defendants admit that Plaintiffs seek various forms of relief, but deny that Plaintiffs are entitled to any such relief.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof that Defendants would not otherwise bear, Defendants also assert the following affirmative and other defenses:

1.  All employment actions taken by Defendants and which are a subject of the First Amended Complaint were taken for legitimate, non-retaliatory reasons.

2.  Plaintiffs cannot establish that any protected activity in which they allegedly engaged was a contributing factor in, or has a causal connection to, any adverse employment action.

3.  Plaintiffs' apparent beliefs that Defendants violated the law were not reasonable.

4.  Plaintiffs' claims must be dismissed, in whole or in part, because Defendants were unaware of their complaints to the Securities and Exchange Commission.

5.  Even if Plaintiffs could establish that their alleged protected activities were a contributing factor in any adverse employment action, their claims would fail because Defendants

774701533

would have made the same employment decisions regarding Plaintiffs in the absence of any such protected activities.

6.      Plaintiff Brawer is not a whistleblower, in whole or in part, in light of his role as Designated Compliance Officer of EJR.

7.      Plaintiffs are not "whistleblowers" under the Dodd-Frank Act with respect to any issues that they did not report to the Securities and Exchange Commission.

8.      Plaintiffs' claims under the Sarbanes-Oxley Act are barred by the applicable statute of limitations for any allegations that pre-date September 16, 2023.

9.      Plaintiffs' claims are barred, in whole or in part, by the doctrines of laches and/or estoppel.

10.     On information and belief, Plaintiffs have failed to mitigate their alleged damages.

11.     Plaintiffs fail to allege sufficient facts to permit any recovery for punitive or compensatory damages.

## **RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES**

Defendants have insufficient knowledge or information upon which to form a basis as to whether they may have additional, as yet unstated, separate defenses available. Accordingly, Defendants reserve and do not waive the right to amend this Answer to add, supplement, or modify defenses based upon legal theories that may be or will be divulged through clarification of the First Amended Complaint, through discovery, or through further factual or legal analysis of Plaintiffs' allegations, contentions, and positions in this litigation.

**WHEREFORE**, Defendants demand judgment dismissing the First Amended Complaint in its entirety, for an award of all reasonable costs and attorneys' fees for the defense of this action, and for such other relief as the Court may deem just and equitable.

774701533

Respectfully submitted,

DEFENDANTS EGAN-JONES RATINGS
COMPANY AND SEAN EGAN

Dated:  November 21, 2024        */s/ Gina Del Tatto*  _____
Gina Del Tatto
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-506-2483
Facsimile: 212-262-1910
gdeltatto@mayerbrown.com

Andrew S. Rosenman (admitted pro hac vice)
Kyla J. Miller (admitted pro hac vice)
**MAYER BROWN LLP**
71 S. Wacker Drive
Chicago, IL 60606
Telephone: 312-782-0600
Facsimile: 312-701-7711
arosenman@mayerbrown.com
kmiller@mayerbrown.com

*Attorneys for Defendants Egan-Jones Ratings
Company and Sean Egan*

66