```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


MICHAEL BRAWER, et al.,          : Docket #24-cv-01895

                 Plaintiffs,     :

     -against-                    :

EGAN-JONES RATINGS
COMPANY, et al,                  : New York, New York
                                   February 19, 2025
                 Defendants.
--------------------------------

                    PROCEEDINGS BEFORE
               THE HONORABLE STEWART D. AARON
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:      PETRILLO KLEIN & BOXER, LLP
                    BY:  EMMA S. SPIRO, ESQ.
                         ADAM SCHUMAN, ESQ.
                         DEEPA DEVANATHAN, ESQ.
                    655 Third Ave, Floor 22
                    New York, New York 10017



For Defendant:      MAYER BROWN, LLP
(Sean Egan &        BY:  KYLA J. MILLER, ESQ.
Egan-Jones          1221 Avenue of the Americas
Ratings Company)    14th Floor
                    New York, New York 11020



For Defendant:      DICKINSON WRIGHT, PLLC
(Wenrong Hu)        BY:  DAVID R. DEROMEDI, ESQ.
                    500 Woodward Avenue, Suite 4000
                    Detroit, Michigan 48226

Transcription Service: Marissa Lewandowski
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

INDEX

E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

THE COURT:  Good afternoon.  This is Magistrate Judge Aaron.  This is the matter of Brawer against Egan-Jones, 24-cv-1895.  This line is being recorded.

I'd like to have the parties identify themselves for the record, please, starting with counsel for the plaintiffs.

MR. SCHUMAN:  Good morning -- or good afternoon.  Adam Schuman from Petrillo, Klein and Boxer with my colleagues Emma Spiro and Deepa Devanathan for plaintiffs.

THE COURT:  Counsel for the EJR defendants.

MS. MILLER:  Good afternoon, Judge.  You have Kyla Miller with Mayor Brown on behalf of defendant Eagan-Jones Writing Company and Shawn Egan.

MR. DEROMEDI:  And good afternoon, Your Honor.  This is David Deromedi on behalf of defendant Wenrong Wu?

THE COURT:  Good afternoon, everyone.  I scheduled this telephone conference to address the EJR defendants letter filed at ECF-108.  In the future, the EJR defendants should file anything seeking relief as a letter motion as opposed to a simple motion.  But I'm obviously dealing with it as

if it were a letter motion.

Just to set the table, the EJR defendants seek to compel plaintiffs to produce documents responsive to request number one of their second set of requests for production of documents. That request calls for production by plaintiffs of the following documents. All communications that you or anyone acting on your behalf (including but not limited to your counsel) have sent since January 3, 2024 to any of the nonparty witnesses listed in your original or amended initial disclosures that reference you, Michael Brawer, EJR or Egan. Those document requests were served on each of the plaintiffs and they're contained in ECF-108.1 at PDF pages 5 and 17.

In response to that request, the plaintiffs raised various objections, including that the request calls for the production of documents that are not relevant to the claims of defenses in this action, and that the request constitutes, and I'm quoting, a direct attempt to invade the attorney-client privilege -- attorney-client and work-product privileges. That's at PDF pages 5 and 6 and 17 and 18 of ECF-108.1.

So before I hear argument, I did have a few

questions to pose to the plaintiffs' side.  So my
first question is, are you aware of communication
since January of 2024 by or on behalf of plaintiffs
to an individual named Gordon Sinclair, warning him
not to say anything negative about the plaintiffs.

MR. SCHUMAN:  So, Your Honor, there's -- I
want to be wholesome without being too technical.
So there's not correspondence on behalf of
plaintiffs who are Michael Brawer and
Philip Galgano.  However, there is correspondence on
behalf of an entity, Transparency Analytics, which
was created after the termination by EJR of
plaintiff to Mr. Sinclair.  And that correspondence
does not concern Egan Jones.  It does not concern
Sean Egan.  It does not concern Dr. Wu.  It does not
concern anything about the Egan-Jones business.  It
does not concern any events prior to the termination
of plaintiffs by Egan-Jones.  Indeed, it doesn't
involve events anywhere in the world prior to their
termination by Egan-Jones.

I wanted to --

THE COURT:  Are there any --

MR. SCHUMAN:  -- be clear.

THE COURT:  Go ahead.

MR. SCHUMAN:  So technically, I think your

question on behalf of plaintiffs, one might answer
it that nothing exists because it's not on behalf of
plaintiffs, but there is such correspondence on
behalf of Transparency Analytics.  And because that
entity is led by the plaintiffs, it exists under
their control.

          THE COURT:  Are there similar types of
communications to any other individuals who are
lifted in your original initial disclosures, your
amended initial disclosures, individuals other than
Mr. Sinclair?

          MR. SCHUMAN:  No.

          THE COURT:  Does your law firm represent
Transparency Analytics?

          MR. SCHUMAN:  Yes.

          THE COURT:  All right.  So with that -- so
this -- I'm going to construe this as -- not
construe it -- it is an application by the EJR
defendants.  I'll start with hearing from the EJR
defendants and then obviously I'll hear from
plaintiffs.  So the floor is yours, the EJR
defendants.

          MS. MILLER:  Thank you.  This is
Kyla Miller.

          I just want to initially state that with

respect to relevancy, our primary concern -- well,
there are two of them.  First, to the extent that
this letter contains language that directs this
individual to not speak poorly of either of the
plaintiffs and/or threatens legal action, we have
significant concerns about that with respect to
potential witness tampering, especially in light of
the fact that Gordon is listed on their initial
disclosures as someone who has relevant information
with respect to the claims in this case.  Beyond
that, it's a little perplexing to us how this also
would not be relevant for mitigation efforts.  To
the extent this is a communication related to their
post termination mitigation efforts with respect to
a new business venture, we think that that's
relevant.  (Indiscernible) independent of all the
other concerns that we've already mentioned with
witness tampering or potential threats of legal
action against Mr. Sinclair.

           We also understand that it's plaintiffs'
burden to establish that the work product protection
exists.  We have not seen any effort for them to
establish that that protection exists.  Not in any
of our meet and confers in which they denied knowing
what we were even discussing at all, to almost a

180 less than 48 hours later to suddenly
acknowledging what it was that we were talking about
when we hadn't provided any additional information
and asserting again, privilege and just a general
relevancy objection.  So from our perspective --

THE COURT:  Yeah, if I could just stop you
because it'd be helpful for me, and it's actually a
question I neglected to ask the plaintiffs because
this may assist in moving forward.  And obviously
I'll hear from the plaintiffs with a more fulsome
discussion of this.  But are the plaintiffs
asserting any type of privilege, whether
attorney-client privilege or the work product
doctrine, with respect to this communication?

MR. SCHUMAN:  No, Your Honor.  I think in
the discovery response you were citing earlier,
which is framed in a way that could encompass such
privileged material, that objection was launched.
But as to the particular document we're talking
about, no.

THE COURT:  Okay.  What documents were you
talking about?

MR. SCHUMAN:  No, generally I mean, there
was a request, a very broad request about
communications with witnesses, and we asserted among

various objections that it could encompass
work-product documents.  But there wasn't a
particular document.

THE COURT:  Okay.  Sorry for
interrupting -- okay, sorry for interrupting, EJR
defendants counsel.  Apologies.

So it sounds like there is no work-product
privilege being asserted with respect to this
communication.  So please proceed.

MS. MILLER:  Thank you.  And I do just want
to make one point with respect to what was just
said.  I understand Your Honor had asked at the
beginning of this call if there were any other
communications that were sent on behalf of plaintiff
to anyone listed on the initial disclosures list who
in theory would also be witnesses to the case.  And
it sounds like from Mr. Schuman's answer, there are
other communications that fall outside the scope of
what we're immediately discussing now, which is this
communication to Gordon Sinclair.  So I just want to
make sure that we're capturing what our RFP was
requesting because we don't waive the -- and it's
our position that we are entitled to see
communications that went to individuals on the
initial disclosure list, to the extent especially

that they contain these types of threats of legal
action or are directing these witnesses on how it is
that they're going to testify to actually in this
case.  So that is really -- that's an overarching
concern.  With respect to --

        THE COURT:  Yeah, but my understanding from
plaintiffs' counsel is there are no other documents.

        Am I missing something?  Are there other
documents we need to be talking about?  That's a
question to plaintiffs' counsel.

        MR. SCHUMAN:  No, I'm unaware of any other
documents.

        THE COURT:  Okay.  So all we're talking
about is this communication, I think.

        MS. MILLER:  Okay.  So with respect to this
communication, given they're not asserting the
work-product privilege anymore, this really is a
question of relevance and burden.  And in that
instance, as we noted in our letter motion and again
in our reply, we think that these types of
communications are independently relevant on the two
bases.  Independent of each other, that one, this
goes to credibility and this goes to potential
witness tampering.  And two, it's relevant with
respect to mitigation efforts.

And of course, it's difficult for us to
speak in the abstract because we seen the actual
document.  So it's hard for us to get more specific
on what exactly this document talks about with
respect to mitigation.  But I think it's fair to say
that any post termination business efforts are
relevant to mitigation issues generally.  And absent
a privilege or some other showing of burden on their
behalf, I'm not sure what the basis is to withhold
that document.

THE COURT:  Okay.  Let me hear from
plaintiffs' counsel.

MR. SCHUMAN:  Your Honor, first, it's
insulting to hear the suggestion of witness
tampering.  My clients are permitted, not obligated
to pursue means of employment after their illegal
termination by the defendant, which they've done.
They're allowed to start their own business, and
they're allowed to do so without the defendants
seeking to invade it and look at every document that
they might -- I mean, what you just heard, and if
you look at the requests in -- not just request
number one, but the others, is an effort to open the
door to any document regarding so called mitigation
efforts.  We've supplied information about any

income by plaintiffs from Transparency Analytics.
They'll have those numbers.  It's been produced.
They can ask questions in depositions.  The idea
that any documents might be available to them,
including any documents regarding someone who's a
witness, Your Honor previously limited discovery of
defendants by plaintiffs in certain key areas that
are directly relevant to this case to end on
January 31, 2024, including whether the defendants
had communications about the identity of
whistleblowers or whistleblowers, including
documents between defendants with the SEC about
plaintiffs themselves.  You prevented discovery into
those areas.

So I'd suggest the idea that there's
relevance, though, if it deals with my client's
business activities afterward is improper.  When we
had, plaintiffs had, directly relevant requests
regarding whistleblower related documents,
communications with the FCC about the plaintiffs.
This is overreaching.  It has nothing to do with
mitigation.  It's insulting to hear the accusation
that has to do with witness tampering.  Plaintiffs
are allowed to go forward and have a business
whether it's favorable and encounters with other

people who used to work at Egan-Jones, unfavorable
encounters or favorable.  It's not a subject area
where document discovery could be permitted.

And depositions haven't even started yet.
There's been no question posed to either of the
plaintiffs in a deposition regarding anything about
their post-termination activities.  So I submit it's
improper, it's fishing and it's unfair given Your
Honor's prior rulings limiting what I submit are
directly relevant document requests to
January 31, 2024.

THE COURT:  Yeah.  You're not claiming
any --

MS. MILLER:  Your Honor --

THE COURT:  Yeah, hold on one sec.

You're not claiming any burden, right?
It's a single docket.  How long is the document?

MR. SCHUMAN:  One page.

THE COURT:  Okay.  So obviously there isn't
any burden associated with it.

So go ahead.  EJR defendants, you wanted to
say something?

MS. MILLER:  Sure.  That was going to be my
point as well.  There isn't a showing of burden
here.  And beyond that, as we have noted, we are not

seeking to compel production of the other seven requests that were in our written requests in that second set.  We are only asking for the first initial RFP, understanding that depositions of both the plaintiffs have not yet occurred.

However, this is the opposite of a fishing expedition when we received information from a former employee identifying the precise communication and indicating that there might be some very concerning language within that communication.  So it is a very narrow and I think reasonable request.

THE COURT:  All right.  Here's my ruling.  Under Federal Rule of Civil Procedure 26, parties may obtain discovery regarding any nonprivileged matter that is relevant to any parties' claim or defense and proportional to the needs of the case.  That's, of course, Federal Rule of Civil Procedure 26(1).

The Court has broad discretion in deciding a motion to compel like this one, *Burton against United States*, 347 F.R.D. 25, the jump site 27, out of this court, out of specifically me in 2024.  Evidence regarding witness credibility and potential bias is relevant.  See *Firefighters' Retirement*

*System v. Citco Group*, 2018 Westlaw 1229752 at Star
3 out of the Middle District of Louisiana, March 9,
2018. And see also *Kaplan v. S.A.C. Capital
Advisors*, 2015 Westlaw 5730101 at Star 2 out of this
court, Southern District of New York, one of my
colleagues, September 10, 2015. In that case, the
Court found the documents that were relevant to
credibility issues were a proper subject of
discovery.

      The Court notes that Rule 607 of the
Federal Rules of Evidence provides that any party
may attack a witness's credibility. Thus,
logically, information regarding a witness's
credibility and potential bias as a result of
documents being received, the Court finds, is
relevant.

      There's no proportionality issue, since
it's a single page. So the Court therefore orders
that no later than February 26, the plaintiff shall
produce this communication from Transparency
Analytics to Gordon Sinclair.

      So that's it for the motion before the
Court. I note that last night, and I don't know why
things happen this way, you know, to the extent it's
done tit for tat, that would be inappropriate. But

nevertheless, there was a motion filed last night.
It's not yet fully briefed at ECF-114, but there was
a question that I had from reading that letter.

On page 4 of the letter, it states that
defendant who, quote, hopes to produce documents to
plaintiffs at the end of next week.  And it says,
i.e. February 21.  February 21 is two days from now.
So was that a typo, or was it that a defendant who
had told the plaintiffs that the dockets would be
produced by February 21st.

MS. SPIRO:  Thank you, Your Honor.  This
is --

MR. SCHUMAN:  Go ahead, Emma.

MS. SPIRO:  Okay.  This is Emma Spiro on
behalf of the plaintiffs.  That was not a typo.  We
reached out to defendant, whose counsel is
(indiscernible) seeking timing, given that it's
been, I think, nearly two and a half, three months
since our requests were served, and we keep getting
various answers.  But we wanted to alert the Court
of the most recent response we had gotten that they
hope that there could be documents produced this
week.  Although just to update the Court, we have
not received any.

THE COURT:  Yeah, so the letter was

dated -- I'm just trying to get my head around dates. The letter was dated February 18, and it says the documents to be produced at the end of next week. To me, that's this week.

MS. SPIRO: Oh, yeah. Sorry, Your Honor, my apologies. The time that we spoke to the defendant, whose counsel was on the meet and confer on February 13th. So it would have been the end of this week that they've been speaking about.

THE COURT: Got it. And so -- I'm sorry. Go ahead.

MS. SPIRO: I mean, Your Honor, if I may just respond very briefly to the comment upfront. This is by no means -- I think you referred to it as a tit for tat.

We reached out multiple times to defendants to try to get a meet and confer on the books. And, you know, they were unable to. They did not, for some, you know, the period of time that we would have liked to have a meet and confer and get this before the Court. So the timing is just the nature of the fact that defendants were not able to meet and confer with us until this time.

THE COURT: All right. So let me hear from Defendant Hu's counsel. When are you going to start

producing documents?  Are you still there?

       MR. DEROMEDI:  I'm sorry, I had someone in my office for a second and had you on mute.  I apologize, Your Honor.  So what I was --

       THE COURT:  Okay.

       MR. DEROMEDI:  Yeah.  So we have received -- we finally received the documents after the -- after a search was conducted.  We have gone through and done an initial review of those.  There's about -- there's a number, I guess, that needed -- there's a number that have to go through a secondary review.  Looks like it's about 100 at this point in time.  That has not been completed yet.

       When I was checking on where the status was before the call, I'm expecting that we will be able to get these out not on Friday, but early next week.  I am shooting for Monday, but it might have to go to Tuesday.  But I understand counsel's point that they want the documents and we're working to get them.  There aren't a huge amount that's had to been reviewed, but there's these.  These several that we do need to go through with more particularity.

       THE COURT:  Well, is there a reason why you can't do a rolling production?  I mean, it sounds to me like there are some that are ready to roll.

MR. DEROMEDI:  I can check with my folks on
that, if we can do that.  I mean, there's -- again,
there's not a huge amount of documentation, but I
can check with the people who are doing that to see
if we could set that.

THE COURT:  Okay.  So the response to this
letter, so it's dated February 18th, just looking at
days of the week.  Yeah.  So the response is due by
Friday.  The Court would look favorably upon a
response that said, you've started a rolling
production.  I'm not ordering you to do so.  But as
I said, I mean, I used to be involved, I guess seven
plus years ago now in document production.
Obviously not the one doing it, but the one
dictating it be done.  And I know for a fact that it
can be done on a rolling basis.  You just kind of do
a snapshot in time.  You just produce what's already
been processed.

But again, I'm not ordering it.  But
indicating that the Court would look favorably upon
a response on Friday.  That said, we've started a
rolling production, Judge, and we expect to be done
by Tuesday or whatever it is.  But again, I'm not
ordering it.  I'm merely indicating what would be
viewed favorably.

All right.  So is there anything else
relating to what was discussed today that I decided
would like to raise.  Let me start with plaintiffs'
counsel?

MR. SCHUMAN:  No, Your Honor.

THE COURT:  Anything from the EJR
defendant?

MS. MILLER:  No, Your Honor.  Thank you.

THE COURT:  Anything from Ms. Hu's counsel.

MR. DEROMEDI:  And nothing, Your Honor.

THE COURT:  All right.  I thank everyone
for their time, and this matter is adjourned.

C E R T I F I C A T E

    I, Marissa Lewandowski, certify that the foregoing transcript of proceedings in the case of Brawer, et al v. Egan-Jones Ratings Company, et al, Docket #24-cv-1985, was prepared using digital transcription software and is
a true and accurate record of the proceedings.


Signature   __*Marissa Lewandowski*__
                 Marissa Lewandowski


Date:      February 21, 2025