Petrillo Klein + Boxer LLP

655 Third Avenue, 12th Fl.
New York, NY 10017

T: 212.370.0330
www.pkbllp.com

ADAM H. SCHUMAN
aschuman@pkbllp.com
D: 212.370.0390
M: 917.574.0883

June 3, 2025

**VIA ECF**

Honorable Analisa Torres
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

Re: ***Brawer and Galgano v. Egan-Jones Ratings Co., Egan and Hu, 24-cv-1895-AT-SDA*** <u>**Opposition to EJR Defendants' Pre-Motion Letter for Summary Judgment**</u>

Dear Judge Torres:

Plaintiffs respectfully write in opposition to the letter dated June 2, 2025, by Defendants Egan-Jones Ratings Company ("EJR") and Sean Egan (collectively, the "EJR Defendants"), seeking leave to file a summary judgment motion. For the reasons set forth below, the proposed motion has no reasonable possibility of being granted. Plaintiffs request that this case be permitted to proceed to trial at this time.

In order for the EJR Defendants to prevail on their proposed summary judgment motion, they must show "the absence of a genuine dispute of material fact by citing to particulars in the record." *Ashmore v. CGI Group Inc.*, 138 F. Supp.3d 329, 339-40 (S.D.N.Y. 2015) (citations omitted). In conducting its analysis of the motion, "the court views the record in the light most favorable to the nonmoving party." *Id.* Plaintiffs "bear[] the initial burden of making a *prima facie* showing of retaliatory discrimination," and "the burden then shifts to the employer, who in order to prevail must 'prove by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of that protected behavior.'" *Id.*[1]

---

[1] For purposes of the letter request by the EJR Defendants, the legal standards are materially the same across the three causes of action in the Amended Complaint – the Sarbanes-Oxley Act, the Dodd-Frank Act, and New York Labor Law § 740. *See Van Elswyk v. RBS Securities, Inc.*, 2017 WL 3431395, at *9 (D. Conn. Aug. 9, 2017) (Dodd-Frank and SOX claims "rise or fall together"). To prevail on a whistleblower retaliation claim, an employee must prove that: "(1) he or she engaged in a protected activity; (2) the employer knew that he or she engaged in the protected activity; (3) he or she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Bechtel v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 710 F.3d 443, 451 (2d Cir. 2013). Were the Court to allow the EJR Defendants to move for summary judgment, Plaintiffs would address any limited legal distinctions between the three statutory violations asserted against the EJR Defendants.

<u>The Retaliatory Discrimination.</u>  As a nationally recognized statistical rating organization, EJR is regulated under the Dodd-Frank Act.  Egan is the sole shareholder and CEO of EJR, and Egan is married to Defendant Wenrong Hu, who was a senior executive at EJR.  Because Egan and Hu held commercial roles, the Dodd-Frank Act prohibited them from taking efforts to influence EJR's analytical staff.

In March 2023, Plaintiff Brawer was EJR's designated compliance officer, and Plaintiff Galgano was the head of EJR's analytical function.  At that time, Defendants Egan and Hu took efforts to pressure EJR's analytical staff to downgrade EJR's credit ratings in the banking sector.  Both Brawer and Galgano reasonably believed this conduct to violate the Dodd-Frank Act and raised concerns internally at EJR, including with EJR's chairman of the board Don Howard.  *See* Galgano Dep. Tr. 77:4-8, 205:21-206:04.  Howard – in texts with Brawer and with Kevin Kearns, another EJR director – expressed concern that Hu's behavior was "out of control" and that the SEC might "go for [EJR's NRSRO] license"; Kearns suspected that "someone [is] in [the SEC's] ear."  DHoward_0001024; DHoward_0001040; DHoward_0000995.

In May 2023, Egan and Hu continued to pressure analysts regarding EJR's bank ratings.  During an interview conducted by the SEC at EJR's offices on May 17, 2023, Galgano complained about the behavior of Egan and Hu; Galgano's complaint was communicated to Egan, Hu and others at EJR; and EJR's board retained outside counsel at Mayer Brown to investigate Galgano's concerns.  In direct response to Galgano's reporting to the SEC, Hu told Brawer, Howard and EJR's in-house counsel Eric Mandelbaum that Hu wanted EJR to conduct a performance review of Galgano – which would be attributed to EJR's board, rather than to her – to be used as a pretext for terminating Galgano.  BG_000216 ¶ 46 ("Mandelbaum informed Brawer . . . that Hu had very recently discussed with Mandelbaum terminating Galgano and attributing it to [chairman] Don Howard").  Each of Brawer, Howard and Mandelbaum told Hu that such an effort would constitute illegal retaliation against Galgano.  *See, e.g.,* Howard Dep. Tr. 208:02-12; 208:23-209:23.

After Galgano's SEC meeting on May 17, 2023, Galgano filed a whistleblower complaint with the SEC on May 23, 2023, which rebuts the assertion in the letter by the EJR Defendants (*passim*) that no written complaint was filed by Galgano.  Further, the evidence is overwhelming that the Defendants were aware of his complaint.  For example, on June 16, 2023, an outside executive recruiter informed Galgano that he had learned that there was a whistleblower at EJR and that he was going to call Egan and Mandelbaum to let them know.  Galgano Dep. Tr. 26:13-27:04.  Immediately thereafter on June 19, 2023, Egan began taking personal, handwritten notes – reciting his supposed recollection of certain past discussions with Galgano (as well as Brawer) – due to "an increased sensitivity of any discussions with the ratings side."  Egan Tr. 84:05-17.  At his deposition in this case, Egan admitted that he had considered whether Galgano might be a whistleblower.  Egan Dep. Tr. 76:01-20.  In addition, after May 17, 2023, Egan repeatedly questioned whether Galgano was a whistleblower in discussions with EJR board members.  Brawer Declaration dated June 1, 2025.  These facts run directly counter to the position of the EJR Defendants (at 3) that "the decisionmakers [regarding Plaintiffs' terminations] were unaware of those complaints at the time they made the termination decisions."

Based upon these facts, the retaliatory motivation for Galgano's termination is plain. On June 29, 2023, EJR's board met and discussed Galgano's performance, just as Hu had directed in response to Galgano's protected activity. As described by Brawer, who attended board meetings, discussions about Galgano's performance "really rose to a crescendo when Wen Hu asked Don Howard to investigate Galgano's performance immediately after Galgano had stated to SEC examiners that Hu had violated federal securities laws." Brawer Tr. 137:10-16. Brawer recalled that Hu "had told me that we need to look into everything we can do to remove Philip Galgano from the company." Brawer Tr. 138:01-08.

Like Galgano, Brawer was terminated as a direct result of his complaints of wrongdoing. On June 13, 2023, EJR's senior IT executive informed Brawer that Hu had attempted to influence the IT executive's statements in an interview with the SEC, and Brawer immediately reported Hu's misconduct to the SEC. The ongoing investigation by Mayer Brown of Egan and Hu (based on Galgano's reporting in May 2023) was expanded to include Hu's effort to influence the IT executive (based on Brawer's new reporting), and Hu was placed on administrative leave on June 16, 2023. EJR0001101. In contemporaneous texts with Brawer, Howard described Hu's behavior as "outrageous" and indicated that Howard would resign from the EJR board. DHoward_0001035. On July 6, 2023, EJR's HR director Karen Foster informed Brawer that Hu was upset with him because Brawer had informed the SEC about Hu's efforts to influence the IT executive's statements to the SEC and because EJR had placed Hu on administrative leave as a result. *See* BG_000217 ¶ 53. Even though Hu was the wrongdoer, Brawer was fired in retaliation for raising the alarm.

On July 27, 2023, Howard informed Brawer that Mayer Brown's investigation had found Egan and Hu to have violated the law; on August 4, 2023, Mayer Brown told Brawer directly that Egan and Hu had violated the law. *See, e.g.,* Brawer Tr. 139:18-140:05. On August 6, 2023, Brawer urged EJR's board to discipline Egan and Hu. On August 8, 2023, Hu purported to resign from EJR; on August 9, 2023, EJR's board voted to discipline Egan. In direct response to being disciplined, on August 11, 2023, Egan informed EJR executives that, going forward, any compliance violations should be reported to Mandelbaum (the in-house lawyer) rather than to Brawer (the compliance officer). BG_000220 ¶ 81. Effective August 15, 2023, Howard resigned from the board. For a period of months beginning in May 2023, Brawer and Howard had texted regularly about filing a whistleblower complaint and, on August 20, 2023, Brawer filed a whistleblower complaint with the SEC and informed Howard that same day. DHoward_0001042 ("I did it.. wb").

The Pretextual Terminations. On November 3, 2023, EJR's board met and discussed eliminating the roles held by Brawer and Galgano – but no other roles at EJR – based upon a purported reorganization. On January 3, 2024, EJR terminated Brawer and Galgano but no other employee at EJR. Contradicting the EJR board's supposed justification of a reorganization, Egan testified that Brawer and Galgano were terminated for performance reasons. In a further *non sequitur*, the EJR Defendants assert in their letter (at 4) that the claim for their violation of the Sarbanes-Oxley Act is barred by the statute of limitations, even though their terminations on

Petrillo Klein + Boxer

Page 4

January 3, 2024 occurred within 180 days of their filing their OSHA complaint on March 14, 2024.  Similarly misplaced is the contention that the passage of time – between Plaintiffs' making multiple complaints of wrongdoing in 2023 and their formal terminations in January 2024 – somehow absolves the EJR Defendants of liability, which argument is particularly flawed given the abundance of "direct proof of retaliatory animus."  *See Fitzgerald v. We Co.*, 2022 WL 952963, at *7 (S.D.N.Y. Mar. 30, 2022) (cited by EJR Defendants).

<u>The EJR Defendants Cannot Meet Their Burden for Summary Judgment.</u>  Plaintiffs readily can make out a *prima facie* case for retaliation, and the burden then shifts to the EJR Defendants to prove clearly and convincingly that no genuine dispute exists that the terminations would have occurred in the absence of Plaintiffs' protected behavior.  *See Ashmore*, 138 F. Supp.3d at 340.  The EJR Defendants cannot possibly meet their burden.

The direct evidence of retaliation is compelling and shows that the protected conduct by Plaintiffs resulted in, and at a minimum contributed to, their terminations.  As to Galgano, for example, Hu explicitly called for his termination immediately after Galgano complained to the SEC about securities law violations.  Hu's behavior was so improper that each of Howard (chair of the board), Mandelbaum (in-house counsel), and Brawer (compliance officer) expressly construed Hu's conduct to constitution illegal retaliation.  The retaliation against Brawer was similarly overt, for example, when Foster (the HR director) expressly told Brawer that Hu was upset with him for reporting her misconduct to the SEC.  In addition, after Hu resigned and Egan was disciplined, Egan directed EJR executives to cease reporting compliance violations to Brawer, despite Brawer's role as the designated compliance officer.

The circumstantial evidence of retaliation also is very strong.  For example, the fact that EJR purported to terminate Brawer and Galgano based upon a reorganization – yet Egan contends that the terminations were due to performance – indicates that the defendants created a pretextual justification for the terminations.  *See Grimes-Jenkins v. Consolidated Edison Co. of New York, Inc.*, 2021 WL 1226658, at *10 (S.D.N.Y. Mar. 31, 2021) (pretext can be evidenced "by demonstrating weakness, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its actions") (citation omitted).  As another example, the chronology of events shows that – after each complaint by Galgano and Brawer – efforts were undertaken by the defendants to fabricate a pretextual justification for their terminations.  *See Murray v. UBS Securities, LLC*, 2017 WL 1498051, *11 (S.D.N.Y. Apr. 25, 2017) (evidence that protected activity was a contributing factor may include "'the amount of time between the protected activity and the adverse employment action, the existence of a strained relationship between the party and the employer, any isolation of the employee from the company, and changed performance evaluations'") (citation omitted).

Petrillo Klein + Boxer

Page 5

      For these reasons, Plaintiffs respectfully request that the Court deny leave for the EJR Defendants to move for summary judgment.

Respectfully submitted,

PETRILLO KLEIN + BOXER LLP

<u>By</u>:*/s/ Adam H. Schuman*
Adam H. Schuman
Emma Spiro
Deepa Devanathan
655 Third Avenue
12th Floor
New York, New York 10017

*Counsel for Plaintiffs*