```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MICHAEL BRAWER and
PHILIP GALGANO,

                        Plaintiffs,

        -against-

EGAN-JONES RATINGS COMPANY, SEAN
EGAN, and WENRONG HU,

                        Defendants.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/30/2025_

24 Civ. 1895 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs, Michael Brawer and Philip Galgano, bring this action against Defendants, Egan-Jones Rating Company ("Egan-Jones"), Sean Egan, and Wenrong Hu, alleging retaliation in violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 15 U.S.C. § 78u-6(h); the New York Labor Law ("NYLL"), N.Y. Lab. Law § 740; and the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A. *See generally* Am. Compl., ECF No. 63. Before the Court is Defendant Hu's motion to dismiss Plaintiffs' SOX claims against her for lack of subject matter jurisdiction and failure to state a claim. Mot., ECF No. 112; *see also* Opp., ECF No. 125; Reply, ECF No. 126. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

I. Factual Background[1]

On June 21, 2022, Egan-Jones, a nationally recognized statistical rating organization ("NRSRO"), and Sean Egan, the company's founder, sole shareholder, and chief executive officer,

---

[1] The following facts are taken from the amended complaint, ECF No. 63, which the Court must accept as true for the purposes of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

entered into a settlement agreement with the Securities and Exchange Commission ("SEC") following a years-long enforcement investigation (the "Settlement"). Am. Compl. ¶¶ 8, 15, 18. The SEC's investigation related to Egan-Jones's alleged violations of (1) SEC rules designed to prevent conflicts of interest in an NRSRO's production of ratings, and (2) statutory obligations under the Securities Exchange Act of 1934 (the "Exchange Act") that require an NRSRO to maintain effective controls to address any conflicts of interest. *Id.* ¶¶ 15–16; 18–19. The alleged violations occurred between 2016 and mid-2019. *Id.*

Egan-Jones hired Michael Brawer and Philip Galgano after the Settlement, in November 2019 and January 2020, respectively. *Id.* ¶¶ 24, 27. Brawer and Galgano were employed "as part of Egan-Jones's purported efforts to improve its controls pertaining to the management of conflicts of interest in compliance with SEC expectations and applicable law as ultimately embodied in the" Settlement. *Id.* ¶ 23. Brawer was hired as Egan-Jones's Designated Compliance Officer and Chief Risk Officer "to strengthen [the company's] [c]ompliance function during the SEC investigation into Egan-Jones's potential violation of SEC rules designed to manage conflicts of interest by NRSROs." *Id.* ¶ 24. Brawer was responsible for, *inter alia*, "monitoring the compliance of Egan-Jones with applicable securities laws, rules, and regulations, administering the policies and procedures of Egan-Jones . . . pursuant to Section 15E(h) of the Exchange Act," which included "address[ing] and manag[ing] conflicts of interest," and "detecting and reporting material compliance failures." *Id.* ¶ 25. Brawer supervised approximately five compliance professionals, reported to the board of directors, including Egan, and had his salary set by Hu, who served as the Director of Operational Development and Chief Operating Officer, until August 8, 2023, and was responsible for the company's human resources function, until May 2023. *Id.* ¶¶ 9, 26.

Galgano was hired as Egan-Jones's Senior Director and later promoted to "Head of the Rating[s] analytical [group] . . . to separate Egan's previously overlapping ownership, business

2

development, and ratings analytical roles." *Id.* ¶ 27. Soon after Galgano joined the company, "Egan was supposed to separate himself from any responsibilities for the ratings analytic function." *Id.* Galgano's responsibilities as the Head of the Ratings analytical group included "adhering to Egan-Jones's established procedures and methodologies for determining credit ratings and keeping analytical decisions free from prohibited conflicts of interest." *Id.* ¶ 28. Galgano supervised about twenty-six analysts and reported to Egan. *Id.* ¶ 29.

Brawer and Galgano claim to have "repeatedly observed conduct at Egan-Jones that [they] actually and reasonably believed constituted violations of federal securities laws and regulations governing NRSROs, including but not limited to Section 15E(h)(1) of the Exchange Act, Rule 17g-5(c)," and the Settlement. *Id.* ¶ 31. This conduct included Egan and Hu pressuring staff to (1) "alter indicative ratings in order to induce customers to engage Egan-Jones to issue final ratings;" (2) falsify the company's ratings to appear more accurate compared to those of other rating companies; and (3) downgrade credit ratings within the banking sector. *Id.* ¶¶ 31, 34–36, 39–40, 42–48, 51–63. Egan and Hu also misrepresented Hu's role to the SEC after Hu "nominally" resigned from her position but "continue[d] to provide unspecified 'guidance and direction' to Egan-Jones." *Id.* ¶¶ 31, 64, 67–72. Brawer and Galgano also observed "a points system for rating analysts that interjected sales and marketing considerations into the ratings analytical process." *Id.* ¶¶ 31, 73–78.

After noticing this conduct, Brawer and Galgano "raised their concerns contemporaneously with executive management and in-house counsel at Egan-Jones on multiple occasions between 2021 and 2023." *Id.* ¶ 80. After Egan-Jones's executive management "failed to address" their concerns, they reported their concerns to the board of directors, outside counsel hired by the board to conduct an internal investigation into potential violations, an independent consultant hired by the company pursuant to the Settlement, and the SEC. *Id.*

According to Plaintiffs, once Egan and Hu learned of Brawer and Galgano's reports, Egan and Hu (1) harassed and threatened them with termination, demotion, and reassignment, and (2) ultimately fired Brawer and Galgano on January 3, 2024, "in retaliation for [their] good faith reports of their concerns regarding violation of federal statutes, rules, and the [Settlement]." *Id.* ¶¶ 121–32.

II. Procedural History

Plaintiffs commenced this action on March 13, 2024, against Egan-Jones and Egan, alleging violations of Dodd-Frank and the NYLL. *See generally* ECF No. 1. The next day, Plaintiffs filed complaints with the Occupational Health and Safety Administration ("OSHA") alleging violations of SOX. *See* Pls. Ltr. at 2, ECF No. 55. On October 24, 2024, Plaintiffs amended their complaint to add claims under SOX and to add Hu as a Defendant. *See generally* Am. Compl.; *see also* Order, ECF No. 58. On January 8, 2025, Plaintiffs voluntarily dismissed their Dodd-Frank and NYLL claims against Hu. *See* ECF Nos. 97, 101.

## DISCUSSION

I. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a claim must be dismissed when it is apparent that the Court lacks subject matter jurisdiction—that is, the statutory or constitutional power to adjudicate the claim. *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id*. When adjudicating a motion to dismiss brought under Rule 12(b)(6), the Court draws all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

II. <u>Administrative Exhaustion</u>

To bring a SOX retaliation claim, a plaintiff must first file a claim with OSHA within 180 days of the alleged retaliatory action or within 180 days of when the claimant first became aware of the action. 18 U.S.C. § 1514A(b); *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019). "[W]hen OSHA fails to issue a final decision within 180 days of the filing of an administrative complaint, and 'there is no showing that such delay is due to the bad faith of the claimant,' a party may seek relief by 'bringing an action at law or equity for de novo review in the appropriate district court of the United States.'" *Daly*, 939 F.3d at 427 (citing 18 U.S.C. § 1514A(b)(1)(B)). The "administrative exhaustion requirements under SOX are jurisdictional and a prerequisite to suit in federal court." *Id.* at 428. Certain time-barred claims, however, can still survive dismissal under the "continuing violation" doctrine, which allows the Court to "review a claim involving a mix of timely and time-barred conduct as part of one violative pattern of activity." *Id.* "The Supreme Court has rejected the continuing violation doctrine in the employment discrimination context when the alleged violation involves discrete acts, rather than an ongoing discriminatory policy." *Id.* at 428–29 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)). Such discrete acts include "termination,

failure to promote, denial of transfer, or refusal to hire." *Morgan*, 536 U.S. at 114. The continuing violation doctrine, therefore, does not apply "to discrete unlawful acts, even where those discrete acts are part of a serial violation." *Gonzalez v. Hasty*, 802 F.3d 212, 223 (2d Cir. 2015).

Hu argues that the Court lacks subject matter jurisdiction over Plaintiffs' SOX claims, "notwithstanding Plaintiffs' exhaustion of their administrative remedies" with OSHA, because the conduct Plaintiffs allege as it relates to Hu "occurred outside of SOX's 180-day statute of limitations." Mot. at 6. Specifically, Hu contends that Plaintiffs' SOX allegations must be limited to events that occurred between September 16, 2023, and March 14, 2024, and any events prior are statutorily barred. *Id.* at 9. Hu also argues that Plaintiffs' claims are not cured by the continuing violation doctrine because "each of [Plaintiffs'] alleged instances are discrete acts that do not amount to an overarching policy of retaliation, or series of acts arising from the same retaliatory animus." *Id.* at 16.

Plaintiffs contend that because they filed their complaint with OSHA within 180 days of their termination, their claims are not administratively barred. Opp. at 6. They argue that they are not asking the Court to review their claims under the continuing violation doctrine but instead make the "straightforward claim" that Hu "violated [SOX] by terminating Plaintiffs due to their whistleblowing activity." *Id.* at 12. Plaintiffs further contend that, to the extent that any of Hu's conduct spans outside of the 180-day statute of limitations, such conduct only "emphasize[s] her central role in . . . the illegal terminations of Plaintiffs." *Id.*

Plaintiffs' complaint alleges they experienced three types of retaliatory actions after Hu learned of their reports of potential violations: (1) their terminations; (2) Hu's threats of "termination, demotion, and reassignment," and (3) harassment. Am. Compl. ¶¶ 121–31, 137. As the parties note, because Plaintiffs filed their OSHA complaints on March 14, 2024, any retaliatory action

that occurred more than 180 days before that date, *i.e.*, action that occurred before September 16, 2023, would be time-barred.  *See* Pls. Ltr. at 2; Mot. at 9.

Because Plaintiffs were fired on January 3, 2024, Am. Compl. ¶ 137, they timely filed their complaints with OSHA on March 14, 2024.  Plaintiffs also timely exhausted their administrative remedies when, more than 180 days after filing their administrative complaints, on October 24, 2024, they amended their complaint in this action to add claims of retaliation under SOX.  Accordingly, Plaintiffs' SOX claims as they relate to their terminations from Egan-Jones are not time-barred.

Plaintiffs' claim that Hu threatened them in retaliation for their reports of potential violations on various occasions before September 16, 2023.  Those claims are, therefore, time-barred.  *See* Am. Compl. ¶¶ 123–25 (alleging that Hu made "[t]hreats to []Brawer's career . . . [o]n September 21, 2022" and on days following); *Id.* ¶¶ 126–25 (alleging that Hu and Egan "[a]tempted [to] demot[e] . . . Galgano" and reassign him on March 11–12, 2023); *Id.* ¶¶ 129–131 (alleging that Hu "[a]ttemped [to] [t]erminat[e] . . .Galgano" on May 17–22, 2023).

Plaintiffs do not point to a specific time period for their claim of harassment, but such a claim can reasonably be inferred from their claim of Hu's threats.  Because Plaintiffs' claims of Hu's threats and harassment are discrete, unlawful acts, the continuing violation doctrine cannot apply to them.  *See Daly*, 939 F.3d at 429.  Accordingly, Hu's motion to dismiss as it relates to these two claims of retaliatory threats and harassment under SOX is granted.  However, "[b]ased on the totality of the pleadings," the untimely claims under SOX serve as "background evidence" to Plaintiffs' timely claims of termination.  *Callahan v. HSBC Sec. (USA) Inc.*, 723 F. Supp. 3d 315, 325 (S.D.N.Y. 2024) (citing *Morgan*, 536 U.S. at 113).

Plaintiffs were previously given leave to amend their complaint, *see* Order, ECF No. 58, and they added their SOX claims against Hu, *see* Am. Compl.  However, Plaintiffs should be given the opportunity to further amend their complaint with "the benefit of th[is]. . . [C]ourt's reasoning in

7

dismissing" their SOX claims of Hu's retaliatory harassment and threats. *See Wickland v. City of New York*, No. 22 Civ. 1554, 2024 WL 4355046, at *13 (S.D.N.Y. Sept. 30, 2024) (citation omitted). Under Federal Rule of Civil Procedure 15(a)(2), the Court "should freely give leave [to amend] when justice so requires." Accordingly, the Court's dismissal of Plaintiff's SOX claims of Hu's retaliatory harassment and threats will operate without prejudice. By **October 30, 2025**, Plaintiffs may move for leave to amend the complaint. In the event Plaintiffs do not timely seek leave to amend their complaint or the Court denies any such request, its dismissal of their claims shall be with prejudice.

III.   Merits

"To prevail under [SOX], an employee must prove by a preponderance of the evidence that (1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Bechtel v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 710 F.3d 443, 447 (2d Cir. 2013) (citations omitted). SOX covers retaliation by "any officer, employee, contractor, subcontractor, or agent" of an NSRSO. 18 U.S.C. § 1514A.

Hu argues that Plaintiffs have not sufficiently alleged that she was an "employee" or "agent" within the meaning of SOX, or that she was "materially" involved in the decision to fire Plaintiffs because that occurred after she resigned from Egan-Jones. Mot. at 12–14. And to the extent Hu remained involved in Egan-Jones's work after her resignation, she claims that she was not involved in Plaintiffs' terminations. Mot. at 13–14; Reply at 4–6. Plaintiffs contend that they have sufficiently pleaded that Hu "continued to have a role at Egan-Jones, including as to personnel matters and Plaintiffs' terminations," that she acted as an employee or agent of the company, and that she was materially involved in their termination. Opp. at 7–11.

The Court agrees with Plaintiffs. As required at the motion to dismiss stage, the Court accepts as true the allegations in the amended complaint and draws all reasonable inferences in Plaintiffs'

8

favor. *See ATSI Commc'ns*, 493 F.3d at 98; *Ashcroft*, 556 U.S. at 678. The Court cannot, as Hu urges, reject these allegations as "untrue." *See* Mot. at 6. Plaintiffs allege that (1) Hu's resignation was "nominal[];" (2) when her termination was announced to the Egan-Jones analytic staff, the company's general counsel "stated that Hu would continue to provide unspecified 'guidance and direction' to Egan-Jones;" (3) "[o]n or about October 23, 2023," an operations manager stated he "was acting on a matter at the direction of Hu;" (4) "[o]n November 26, 2023, a former employee of Egan-Jones received an anonymous text . . . communicating a desire to recruit the former employee" to return to the company from a phone number Brawer "suspect[ed]" belonged to Hu; and (5) "[o]n December 18, 2023," as part of a continuing recruiting effort, which started in September 2023, for an analytical position in the company, Galgano spoke with the Head of Human Resources, who replaced Hu, about the candidate and the Head of Human Resources communicated that an "executive recruiter for Egan-Jones" told her "'Wen really liked' the candidate," which Galgano understood to mean that "the candidate had been vetted by Hu." Am. Compl. ¶¶ 68–71. Plaintiffs also allege that the chairman of the Egan-Jones board of directors and the general counsel "communicated to []Brawer . . . that Hu had raised with each of them the proposal that a performance review of []Galgano be conducted and that he be terminated or demoted after the review." *Id.* ¶ 68. According to Plaintiffs, "the general counsel informed []Brawer that Hu had indicated that she planned to attribute the termination to the chairman of the board of directors" and the chairman "told []Brawer [that] a termination of []Galgano would likely constitute prohibited retaliation." *Id.*

Accepting Plaintiffs' allegations as true, Plaintiffs have plausibly pleaded that Hu continued to act on behalf of the company, either as an employee or agent, following her resignation. And because Plaintiffs allege that Hu continued to be involved in employment decisions for Egan-Jones as of December 18, 2025, *see id.* ¶ 71 (alleging Hu's involvement in a specific hiring decision), it is

9

plausible that Hu was also involved in their terminations on January 3, 2024. Accordingly, Hu's motion to dismiss Plaintiffs' SOX termination claim for failure to state a claim is denied.

## CONCLUSION

For the foregoing reasons, Hu's motion to dismiss is GRANTED IN PART and DENIED IN PART.

1. Hu's motion to dismiss is GRANTED with regard to Plaintiffs' claims of Hu's retaliatory threats and harassment in violation of SOX. Those claims are DISMISSED without prejudice.

2. Hu's motion to dismiss is DENIED as it relates to Plaintiffs' claim of Hu's retaliatory termination in violation of SOX.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 112.

SO ORDERED.

Dated: September 30, 2025
      New York, New York

_____
ANALISA TORRES
United States District Judge